United States District Court
District Of Delaware

Jerry A. Hurst, pro se
Plaintiff,

v.

Merrill Trader,
Linda White, Doris
Wilkins, Veronica
Faust, Christine
Tunnel, Stuart
Drowos, Rick
Kearney, And Does
I-XX, individually
And in Their official
capacities,
Defendants.

Civil Action No.    0 6 - 1 4 6

Complaint For:
1) Damages;
2) Injunctive Relief
And;
3) Declaratory Relief.

<u>Outline</u>

Jurisdiction
Parties
Lack of Immunity
Facts (Including <u>Per Se</u> Violations, And Damages)
Civil Rights Counts (42 U.S.C. § 1983)
Other Counts
Request for Relief

[Exhibits A — F3. Exhibits are incorporated herein.]

## Jurisdiction

1. This Action Arises under the United States Constitution including, but not limited to, the First, Fourth, Fifth, Sixth, Seventh and Fourteenth Amendments, And under The Federal law, particularly 42 U.S.C. § 1983.

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff (hereafter "Hurst") invokes supplemental jurisdiction of this Court over state claims Against defendants, including common law claims, pursuant to 28 U.S.C. § 1367 As These claims form part of the same case or controversy.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

5. Demand for A jury trial is made pursuant to Rule 38 of The Federal Rules of Civil Procedure.

6. The Amount in controversy exceeds $75.000.00, exclusive of interests and costs.

## Parties

7. Hurst is A citizen of The United States of America And A resident of Arlington County, State of Virginia.

8. Defendant Merrill Trader (hereafter "Trader") is, And was at all times relevant, employed by The Delaware Court of Common Pleas As A judge.

(2)

9. Defendant Linda White (hereafter "White") is, and was at all times relevant, employed by the Delaware Court of Common Pleas as a clerk and Assistant to Trader.

10. Defendant Doris Wilkins (hereafter "Wilkins") is, and was at all times relevant, employed by the Delaware Court of Common Pleas as the Clerk of the Court for the Sussex County Court of Common Pleas.

11. Defendant Veronica Faust (hereafter "Faust") is, and was at all times relevant, employed by the Delaware Attorney General's Office as a Deputy Attorney General.

12. Christine Tunnel (hereafter "Tunnel") is, and was at all times relevant, employed by the Delaware Attorney General's Office as a Deputy Attorney General.

13. Stuart Drowos (hereafter "Drowos") is, and was at all times relevant, employed as a Deputy Attorney General.

14. Rick Kearney (hereafter "Kearney") is, and was at all times relevant, employed by (or acting as an independent contractor for) the Sussex Correctional Institution (SCI) as a warden. SCI is a semi-autonomous organization funded by various federal cooperative contractual programs (including, but not limited to, the "Boot Camp" program) whereby it operates as a semi-autonomous body and waives sovereign immunity under the 11th Amendment by the express terms of the federal Agreement. The State of Delaware, independent of SCI's semi-autonomous status, and waiver of 11th Amendment immunity, has expressly elected by statute to waive sovereign immunity and subject itself

to legal action under the 11th Amendment in federal court, or any other court, as a matter of public policy, and as held by the Delaware Supreme Court, <u>expressly</u> <u>regarding</u> <u>state</u> <u>employees.</u>

15. Does I – XX Are defendants, including independent contractors and subcontractors, acting in violation of the laws and constitutional provisions set forth herein (including conspiring with Kearney, Faust, Drowos and the other defendants), whose names, capacities, and particular acts will be specified as they become known during discovery herein. Independent contractors and subcontractors are alleged to have provided a range of services, products and items including, but not limited to attack dogs for intimidation and torture at SCI, medical services, falsification of records, blood analysis, repair of inoperable toilet and plumbing in solitary confinement cells, and concealment and/or destruction of records, blood samples and related items of evidence at SCI and/or laboratories and facilities at other locations. Examples of medical services include those relating to injection of "tuberculin" germs into pretrial detainees and failure to, and/or improper segregation of, inmates and pretrial detainees to protect against transmission of tuberculosis as required by applicable regulations, laws, medical practices and standards as well as civil rights of pretrial detainees.

16. Each defendant is sued in his individual and official or representative capacity relative to his employer, superior, organization or affiliation, as applicable. The term "defendants" used herein, unless otherwise specified, means all of the defendants (including "Does"), and each of them, in all of their respective capacities.

## Lack of Immunity

17. All allegations involving acts by Trader, even purporting to be "official," are hereby limited to, and alleged to be, investigative, administrative, clearly outside the scope of his judicial author- ity (such as criminal acts), extrajudicial conduct, and/or in "complete absence of all jurisdiction" or constituting by law "unofficial conduct" so as to pre- clude judicial immunity (and any other immunity), as a matter of law, for these acts.

18. All allegations involving acts by Faust, Tunnel and/or Drowos, even purporting to be "official," are hereby limited to, and alleged to be, investigative, ad- ministrative and/or falling outside the "traditional advocacy functions" including, but not limited to, giving legal advice to police, SCI personnel and related independent contractors during an in- vestigation and otherwise; fabricating evidence; using evidence known by them to be false or fabricated; criminal acts; concealing and/or destroying evidence, or conspiracy to do so; violation of outstanding orders to produce legally required evidence in contempt of court; fraud on the state and federal courts in Delaware and Vir- ginia, or conspiracy to do so; or by law consti- tuting "unofficial conduct" so as to preclude prosecutorial immunity (and any other immunity), as a matter of law, for these acts.

19. All allegations involving acts by persons other- wise entitled to "qualified immunity," even purporting to be "official," are hereby limited to, and alleged to be, acts violating "clearly established law" and/or consti- tuting by law "unofficial conduct" so as to preclude "qualified immunity" (and any other immunity) as a matter of law, for these acts.

20. The terms "official" and "unofficial conduct" herein
are used in the sense, and with the same
legal denotation, as used in <u>Clinton v. Jones,</u>
117 S. ct. 1636, 1643 (1997); and in <u>In Re Allen,</u>
119 F. 3d 1129, 1130-31 (4th Cir. 1997), discussing
<u>Clinton</u> and related federal authorities on this
point.


## Facts

21. By letter dated March 4, 2004, Trader commenced
contempt proceedings against Hurst by issuing the
following order to the "clerk of the court"
Wilkins: [The date of his scheduled hearing is in the <u>indefinite</u>
<u>future</u>.

      "... schedule a contempt hearing for
      non-payment of your fines."

      (Letter of March 4, 2004; Exhibit A hereto.)
      (Caused by Trader, <u>by use of U.S. mail</u>, to be
      delivered to Hurst in Virginia, <u>on or about March 8,
      2004</u>)

22. Trader knew that the "fines and costs" were stayed
by law <u>and written agreement</u> between Hurst and
the Court of Common Pleas, <u>from their imposition and at all
times</u>, since February 5, 2002, and that at <u>no time</u>
was Hurst ever in a state of "non-payment." The
stay is granted due to actions to declare them <u>void ab initio</u>.
These legal actions are pending, or were filed, in the Federal District
Courts in Delaware and Virginia; the bankruptcy
court in Virginia; the Fourth Circuit Court in
Virginia, and the United States Supreme Court.
The current stay is attached hereto as Exhibit B.

23. Trader's letter, <u>on its face</u>, expressly re-
taliates against Hurst for filing an "Amended

complaint" in bankrutcy court in Virginia:

"I have received a summons and notice from Doris Wilkins, Clerk of the Court of Sussex County relating to an amended complaint that you filed in with (sic) the United States Bankruptcy Court of The Eastern District of Virginia, Alexandria Division." (Exhibit A)

24. Trader also commences, by the orders referenced in his March 4, 2004 letter a later independent action to be conducted not simply by an attorney or bankruptcy attorney, but rather by a

"... prosecuting attorney in Virginia ...."

Although Trader represents that he is pursuing the subsequent prosecution of Hurst for "non-payment" of "fines and costs," the Delaware prosecution, by law, manifestly cannot extend by the direct intervention of the Delaware state judiciary into Virginia.

25. Furthermore, as a matter of law, the chapter 7 proceeding, as well as the adversary proceeding therein against Wilkins (the "Amended complaint" for which Trader retaliates), is solely a civil matter regardless of the nature of the debts being discharged, including "fines and costs." Consequently, any attorney that Trader could cause to aid and abet his retaliation, would in no case function as a "prosecuting attorney" in a civil matter in the state of Virginia. Trader's scofflaw claims and later acts of retaliation are to intimidate Hurst in the indefinite furture, including at the time of filing the instant action, thus

(7)

violating Hurst's civil rights freely to petition the government for relief, with <u>unfettered access to the courts</u>, without "chilling," hinerance; delay; fear; intimidation; loss or destruction of evidence; loss of witnesses or memories of a witness; passage of time beyond statutes of limitations; added costs and expenses; and/or the "deception" and "denial-of-access cases" (both "forward" and "backward" looking cases) As these specific terms are discussed in <u>Christopher v. Harbury</u>, 122 S.Ct. 2179, 2185-87, (2002).

26. The allegations of facts in <u>Hurst v. Rehoboth</u> (Civil Action No. 03-362-KAJ) and <u>Hurst v. Dover</u> (Civil Action No. 04-0083-KAJ) are hereby incorporated by reference. Although the instant legal action is based on separate, discrete acts of retaliation, intimidation, conspiracy and other particular acts set forth herein, and though the previous cases are based on acts in a <u>different time-frame</u> (i.e. 2001-2002 for the most part), they are helpful in delineating the civil and criminal culpability and liability, which the instant violations of law, civil rights, and other wrongful conduct (set forth in the instant case of retaliation and intimidation) <u>seek to coverup</u>, illegally conceal and preclude from <u>lawful redress by access to the courts.</u>

27. The <u>Wilkins</u>' Adversary proceeding in bankruptcy court, as well as the <u>Additional Trader Adversary proceeding on record</u> (repeatedly <u>referenced</u> in the <u>Wilkins</u> proceeding and currently on petition for certiorari before the Supreme Court) <u>relative to Merrill Trader</u>, gave clear <u>notice to Wilkins</u>

And to Trader (Trader admits that Wilkins routinely sent the bankruptcy documents to him — See Exhibit A) that the adversary proceeding directly against Trader, exposing his violations of both civil and criminal laws "fixing" the case ["structural error"]. That action was precluded by his retaliatory letter.

28. The adversary proceeding in bankruptcy allows use of the subpoena power, rules of discovery, contempt of court and similar tools to require production of the illegally withheld evidence in violation of Judge Beauregard's outstanding orders to Delaware to produce evidence (i.e. to Faust, Tunnel and Drowos as Deputy Attorneys General for Delaware).

29. In addition, the bankruptcy court [entirely independent of the inapplicable Rooker-Feldman doctrine, and without need of the clearly available §1983 as explained in Spencer v. Kemna, U.S. 1, 21 (1997)] has the power to set aside as a "mere formality," a void judgment; or it may declare it to be voidable, and upon evidence and legal argument, declare it to be void. The "amended complaint," against which Trader retaliated, sets forth briefly the facts and law demonstrating, and alleging the voidness ab initio of the underlying "convictions" in Trader's court due to "structural error" therein requiring automatic reversal. The facts in the "amended complaint" relate the agenda, pretexts and acts of fraud, deception, and obstruction of justice used by the instant defendants then, and sought now to be illegally concealed by retaliation in bankruptcy court. The retaliation extends to pending and future litigation to hold the defendants accountable under the applicable civil and criminal

laws, whether in Delaware, Virginia or currently pending before The Supreme Court (Wilkins Adversary proceeding Against which Trader specifically retaliated). The intimidation of using The Court of Common Pleas illegally to order contempt proceedings, without regard to The ongoing stay, is continuing And under color of law.

30. The useless nature of The stay (Exhibit B) is demonstrated by Traders' retaliatory commence-ment of contempt proceedings set forth in his retaliatory letter. Indeed, Trader's order, set forth therein, is unvacated and ongoing, constituting a continuing violation every day as set forth in The instant complaint. [The useless nature of the stay was previously demon-strated by Wilkins herself – see paragraphs 36, 49 and 55(a) of complaint in Hurst v. Dover, supra.]

31. It is in The above-noted context that motives to coverup, illegally conceal evidence and preclude access to The courts by retaliation and intimida-tion must be evaluated. Rather than having actually committed a criminal offense, Hurst on April 9, 2001 called "911" for transportation to a medical facility. Officer Parsons expressly admits in trial testimony that there were no "charges on Hurst" at any time in his room, even after the warrantless break-in, assaults and batteries, and physical coercion and threats of arrest and jail, if I did not voluntarily consent [an oxymoron in This context] to go with me police. Consequently, the defendants' motives and agendas are purely for self protection against lawful accountability rather than due to Hurst's perfectly legal and proper conduct on April 9, 2001, specifically required by numerous

(10)

doctors' orders, including five (5) days earlier by Dr. Wilbanks in Rehoboth Beach [as noted in detail in the Rehoboth Beach and Dover cases, supra]. The defendants' acts can only be deemed desparate violations of law, that "shock the conscience" relative to $100.₀₀ fines, occurring years ago in misdemeanor cases with Hurst initially calling for transportation. The stakes, on the other hand, not only for the instant defendants, but also for those in the Rehoboth Beach and Dover cases, are high relative to civil and criminal violations as well as related judicial misconduct before the Delaware Court on the Judiciary; discipline in the Attorney Generals' Office; the findings and conclusions of federal and state investigations (such as the Honorable Nancy Wagner's request for a full investigation from the Delaware Attorney General); as well as disbarment proceedings before the Delaware State Bar. In addition, it is clear that torture, deprivation of prescribed medicines, destruction and illegal concealment of criminal conduct and spread of tuberculosis through various means, may be grounds for legal actions by the U.S. Government to cancel federal funding for the "Boot Camp" programs and other consequences pursuant to the federal contractual programs. Likewise, Delaware or the federal government or the independent contractors, may determine that grounds exist for termination of independent contractors' and subcontractors' various contracts, as well as indemnity and/or damages for breach of contract by these parties.

32. Consequently, the acts by Trader and the other defendants, however malicious, illegal and violative of Hurst's civil rights they surely are, also are irrefuteably quite rational

calculated and predictable in view of the
facts set forth in the Rehoboth Beach and
Dover cases and the high stakes noted herein
for the defendants if disclosure is made
through bankruptcy adversary proceedings.

33. Indeed, the extreme degree of calculation
utilized by Trader, Faust and Drowos, each
being a lawyer and one being a judge, is
demonstrated by the calculated effect by Trader
(even though entirely false and fraudulent) of
the express indication on the March 4, 2004,
letter of Trader, representing he had filed
a copy, of his retaliatory letter to Hurst,
directly with the bankruptcy court, purporting
to act under color of law by use of his
official letterhead entitled:

            "Court Of Common Pleas
            For The State Of Delaware "

A false subscript indicates his filing with the
bankruptcy court in his official capacity as a
state court judge, directly intervening (rather
than waiting for the appropriate acts by the
executive branch of the state government) in a
federal civil proceeding. He threatens and intimidates
Hurst from proceeding with that adversary
proceeding (Wilkins) and the following one Against
him (Trader) already of record in the Wilkins
case, since they were related matters. The
false notation appears at the bottom of the
page (Exhibit A):

            "pc: United States Bankruptcy Court, Eastern
            District of Virginia "
[The bankruptcy court clerk assured me repeatedly that Trader's
letter, in fact, was never filed with the bankruptcy court.

34. White was a named defendant for actively implementing the "scheduling fraud" set forth in the <u>Dover</u> complaint. She directly <u>lied</u> to Hurst on February 4, 2002, <u>repeatedly</u>, when Hurst diligently tried to obtain the truth, that the several motions before Trader would be heard, rather than the trial, the next day. The motions required compliance with the Beauregard orders to produce "all results" of the Internal Affairs Investigation, as well as the blood sample itself for "independent analysis" previously issued by her orally and in writing. Other motions, including a motion for continuance, a motion for findings of fact and conclusions of law regarding the affidavit perjured on its face (concealing even the break-in itself) as well as a motion for sanctions against the State for past violations of these orders and contempt of court. She <u>repeatedly assured me</u> that Trader had ordered that the motions would be heard on February 5, 2002, rather than a trial. [Clearly it would take time for the State to produce the evidence and the blood (alcohol intoxication was claimed and heavily relied on repeatedly at trial and in the closing statement by the State) for independent analysis by Hurst, as ordered explicitly and repeatedly by Judge Beauregard. Additionally, the eight (8) interview tapes of the eyewitnesses and perpetrators themselves (Rehoboth Beach police and E.M.T.'s) were also central evidence directly material to the case and central to Judge Beauregard's orders to produce evidence. When Faust was asked if she had them with her by Trader on February 5, 2002, at what was supposed to be the <u>hearing to produce and for sanctions</u>, she confessed she did <u>not have them with her.</u>] Contrary to White's fraudulent

(13)

assurances, quite explicit, quite express, and quite unambiguous, The written orders had been summarily denied on February 1, 2002 by written order by Trader and typed by White herself (as indicated on The face of the order itself), but only delivered to Hurst after the "trial."

35. Likewise, The retaliatory letter of March 4, 2004, by Trader was typed by White, who with full knowledge of Trader's scofflaw and criminal acts, willingly participated and conspired with him, and The other defendants, as Trader's assistant.

36. Trader and White, using the United States mail, intimidated and threatened Hurst, causing the Trader retaliatory letter to be delivered to Hurst in Virginia, on or about March 8, 2004,

37. Wilkins, a named defendant in The Dover complaint for wrongful and illegal acts stated therein, also had strong reason to conspire, and did conspire, to commit illegal acts to coverup her violations of law previous to the adversary proceeding in bankruptcy. Consequently, even though she was named in her individual, as well as official capacity, in a federal bankruptcy proceeding in Virginia [not invoking The jurisdiction of The Sussex County Court of Common Pleas, nor the jurisdiction of Trader], she conspires with Trader to forward The bankruptcy proceeding "Amended complaint," summons, and notice of lawsuit to Trader for The purpose of retaliation and intimidation of Hurst. See Exhibit A verifying Trader's receipt of these documents directly from Wilkins rather than Wilkins seeking

proper legal counsel, without conflicts of interest and a history of scofflaw and criminal acts (such as Trader's) known to her specifically in the Hurst case. These are set forth in the "Amended Complaint" in the adversary proceeding and attached hereto as Exhibit C.

38. This illegal conduct by Wilkins is analogous to the illegal conduct by her in the <u>Dover</u> case when she forwarded the "Request For Transcript" (a purely ministerial act <u>required</u> of her office by law and rules of court) to Trader so that he could illegally deny access to the transcripts (including the critical Beauregard transcript) five (5) months after its appeal to the Superior Court, <u>divesting</u> Trader completely of jurisdiction. Trader <u>noted his lack of jurisdiction</u> with his flagrant scofflaw conduct, whether to <u>grant or deny</u> any request or motion. In fact the ministerial act allowed no judicial action and was a constitutional right of any appellant since the transcripts were <u>fully paid for by Hurst personally</u>. This conspiracy, in the <u>instant case</u>, though years later in a <u>different time-frame</u> relating to bankruptcy court, is retaliation for the <u>purpose of precluding</u>, delaying or hindering access to the courts 'to <u>rectify</u> her and the other defendant's <u>prior wrongful acts.</u> <u>Subsequent</u> to the transmission of the retaliatory letter to Hurst by Trader on <u>March 8, 2004, Trader conferred, planned and acted</u> continually with Wilkins, Faust and Drowos to retaliate and intimidate, in violation of Hurst's civil rights as <u>demonstrated</u> in Faust's and Drowos' letters dated July 2, 2004 and February 1, 2005, <u>infra.</u>

39. By letter dated July 2, 2004, Faust demonstrates her conspiring with Drowos and Trader. The letter written by Faust to Trader apprising him of

"... the state's response to the discharge of Mr. Hurst's fines and costs in ... Bankruptcy." [Exhibit D hereto]

40. Faust sends a copy to Hurst and claims that the various acts of the "prosecuting attorney" ordered by Trader in his retaliatory letter are progressing since the matter

"... has been assigned to Stuart Drowos in our office."

41. Faust represents in the copy provided to Hurst, to intimidate him from proceeding with the planned litigation in bankruptcy court in adversary proceedings against Wilkins and Trader, since the Trader action (to be filed) was of record in the Wilkins documentation. It is important to note that Faust's threat extends beyond the Wilkins adversary proceeding, threatening to

"... vacate the discharge in Bankruptcy"

itself, rather than limiting the intimidation and retaliation to only the adversary proceeding against Wilkins. Consequently, the vacating of the debts unrelated to the "fines and costs" is expressly threatened by Faust, and

(16)

According to her letter, by Drowos also.
This is malicious in the extreme and clearly
indicates the strong, and rational, motives
Faust acts on in conspiring with all of
the defendants in the instant case to
protect herself, and them, from exposure.

42. Examples of these reasons for retaliation,
conspiracies, violation of Hurst's access to
courts and other governmental redress (such as
the ongoing federal investigations, by the F.B.I. and
others, as well as the state legislative inquiry by
the Honorable Nancy Wagner) which are the genesis
for the instant wrongful conduct regarding the
bankruptcy proceedings include, among others, the
following items illegally concealed:

  a) A carefully and illegally concealed police report
  by Officer Sutherland (Rehoboth Beach police), in
  violation of Judge Beauregard's repeated orders
  specifically naming this particular report
  [Sutherland was the "Shift Commander" on
  April 9, 2001, during the illegal break-in,
  kidnapping and violent injuries of Hurst
  in violation of 18 U.S.C. § 242 (a federal
  felony providing for severe penalties) and
  a plethora of other civil and criminal laws,
  both state and federal]

  The report was criminally concealed during
  the criminal "trial" instantly required by
  Trader with no notice whatever, on February 5,
  2002, with full knowledge of the outstanding
  and never vacated orders to produce the
  report and voluminous other illegally concealed
  evidence by the State. The report was initially
  obtained by Hurst in litigation of the Rehoboth Beach

(17)

case as evidence criminally concealed not only by Faust and Sutherland, but by Walter Speakman (city Attorney for Rehoboth Beach), who criminally conspired with Trader and Faust directly to "fix" the case in Georgetown, Delaware on February 5, 2002. [See paragraphs 38 and 39 of Dover complaint where lengthy, egregious <u>ex parte</u> conduct is set forth. It was overheard distinctly, at close range, as well as clearly, precisely observed <u>with disgust</u>.]

Previously, Faust, Speakman and Trader had conferred, as they were allowed by Trader <u>in</u> the Court room selecting the individuals who would form the jury. Trader had ordered Hurst to remain <u>outside</u> the courtroom and away from these previous <u>ex parte</u> communications.

The report was of <u>particular importance</u> and illegally concealed from the trial, and earlier, violating Beauregard's orders, because it explicitly confesses that the <u>lie</u> [fabricated preposterously by Trader that Hurst "voluntarily consented to go with the police" — conspired to between Faust, Trader and Speakman] was <u>known</u> by them (and later by Drowos) to be utterly and irrefutably <u>false</u>, totally independent of the Internal Affairs Report which confirms Sutherland's express admissions. This Internal Affairs report, was not allowed to be used even to <u>impeach</u> the state's witnesses <u>testifying</u> at trial — nor were the other police reports.

The Sutherland police report is dated April 10, 2001. Like the other police

(18)

reports, which at no time even suggest "exigent circumstances" but do, on the other hand, universally emphasize the vehement refusals of Hurst voluntarily to "consent" or physically to allow his removal while (as sworn by Parsons and Armstrong), not even charged nor under arrest, from not only his locked room but the hotel itself, Sutherland also confesses the injuries inflicted during the abduction. Thus, the Sutherland police report confesses and corroborates the fact that Hurst vehemently protested and never consented to his removal, despite outrageous assaults, batteries, threats of arrest and jail, and coercion of the most extreme, long-lasting (over 30 minutes), express, and physical nature. It also corroborates the guilt of the instant defendants directly in the criminal concealment and coverup of this report.

Unlike all the other police reports, Sutherland's report is entitled

"Arrestee's Injury or Illness Report and Request for Examination and Treatment"

The report expressly indicates numerous injuries to the eyes and body, on the face of the report, with notations of the pepper spray, visible "abrasion" and other injuries, including to the eyes.

Sutherland certifies that these items

(19)

clearly were "injury" "received" during the arrest. She specifically requests the "Admission" of Hurst

"... to Beebe Medical Center for examination and treatment."

Sutherland, states unambiguously that Hurst was threatened with <u>arrest</u> for disorderly conduct <u>if</u> he did not <u>submit to</u> the undeniably illegal, physically forced, <u>medical treatment</u> by the E.M.T.'s and hospital admission and treatment which Hurst, verbally and physically, <u>adamantly refused, and never con-</u> <u>sented to.</u> Sutherland <u>flatly states</u> <u>that Hurst</u>

"... would not allow the ambulance crew to assist him. The Defendant was advised that <u>if</u> he continued <u>to prevent</u> the ambulance crew from doing their job, he would be <u>arrested for disorderly con-</u> duct." [signed statement by Suther- land attached to above-noted "Arrestee's Injury" report entitled "Shift Commander's Statement"] (emphasis added)

This is a <u>per se</u> violation of the <u>civil right</u>, which has long been settled law, to <u>refuse medical</u> <u>treatment</u> as this right is set forth in the landmark case by the Supreme Court entitled <u>Cruzan v. Director, Missouri</u> <u>Dept. of Health</u>, 110 S. Ct. 2841 (1990) and numerous other supporting authorities.

(20)

However, under no circumstances should it be ignored that the <u>Cruzan</u> case <u>did not</u>, nor has any other case known to Hurst, <u>involve</u> the brutal kidnapping, by means of an illegal warrantless break-in to a locked private room, adamantly protested verbally and physically by the victim, based on the <u>FRAUDULENT PRETEXT</u> of medical treatment. The Ambulance and E.M.T.'s were <u>dismissed immediately</u> after the violent removal of Hurst from the hotel and <u>ordered not to treat Hurst</u> for anything, including the obvious injuries to his eyes and multiple bleeding "abrasion(s)."

Of course, Sutherland also confesses, contrary to the perjured probable cause affidavit of Parsons, entirely concealing the warrantless break-in itself, that Hurst in fact at <u>no time</u> offered the slightest resistance to arrest and, importantly, physical force was used by the <u>police themselves</u>, not simply the E.M.T.'s as perjured by Parsons at trial attempting to shift blame to them. Regarding Hurst's physically forced removal for "medical treatment" Sutherland confesses:

"When the officers were unsuccessful and it became clear that additional force would be necessary, Cpl. Parsons utilized his O.C. spray and sprayed the Defendant. At that time the Defendant became <u>submissive and force was no longer necessary</u> to affect (sic)

(21)

the arrest of the Defendant. "
[4th paragraph of Sutherland's
signed statement attached to
the illegally concealed police
report specifically named
(i.e. "Sutherland) by Judge
Beauregard to be produced by
Frost on November 19, 2001,
and in her subsequent written
order.] [Hurst at this time was <u>securely</u>
strapped to the gurney <u>during pepper spraying.</u>]

b. Also of critical need to be concealed by the
instant defendants in the bankruptcy adversary
proceeding against Wilkins was Trader's
legally frivolous and "fixed" ruling. Hurst's
dramatic refusals to be "treated" by the
E.M.T.'s and police, conveyed unmistakably
to all witnesses, and described in detail
by "Sean," [the witness specifically de-
manded by Hurst to be interviewed since
he was the hotel clerk who conspired with
the police to give them the key to
the locked room, but carefully excluded
during the Internal Affairs Investigation]
were not only confessed by Sutherland
but throughout the Internal Affairs
Report. Indeed, Tammie Morrison expressly
stated that as part of the coercion the
<u>police</u> expressly gave Hurst an "<u>ultimatum</u>"
to go with them for treatment or
be <u>arrested.</u>

Even <u>Trader</u>, as ordered by Judge Beauregard
prior to her hastily arranged removal
from the case, read the Internal
Affairs Report and ruled that it <u>did</u>

(22)

contain Brady material and ordered the
entire report with all attachments released
as a matter of law to Hurst. Of course,
he had no choice, in view of Judge Beauregard's order.
Consequently, he arranged and conspired
with the instant defendants, and others
noted in the Rehoboth Beach and Dover
cases to "fix" the case otherwise, and later,
to prevent its disclosure in the bankruptcy court.
It clearly subjects Trader to severe
penalties, under 18 U.S.C. §242 and
other criminal laws and judicial
rules of conduct, to perform the illegal
services done by him (for the benefit
of the defendant's) in the noted bank-
ruptcy and other cases in federal dis-
trict court. Trader's ruling set forth infra
is in flat contradiction to the facts
sworn to and certified by Sutherland
and all of the interviewees even as
sanitized in the synopses (not verbatim)
included in the transparent whitewash
prepared by the Dover police in close
(and admitted) collaboration with the
Rehoboth Beach police, as well as Faust
and Speakman. Trader's concoction
not only claims the subsequent
exoneration of the police for the
warrantless break-in. Trader states he assumes
it was indeed illegal and violative
of federal constitutional guarantees in
order to falsely fabricate "consent"
to go with the police during the falsely
claimed resistance to arrest. Trader's
ruling is in the "alternative" and designed
to cover all possibilities, performing
his agreement with Speakman and the

instant defendants. However both alternatives
are so <u>contrived</u> and flatly contradictory ot
the sworn facts by <u>all</u> interviewees in the
Internal Affairs Report, <u>and all</u> witnesses
testifying at trial [and the <u>stipulations</u> of
the State (Faust) at trial] that there was
"No Emergency," that aside from the other
due process violations illegally concealing
the evidence ordered by Judge Beauregard, and
the "scheduling fraud" and other "structural
error" devised by him to "fix" the case], that there
is absolutely <u>no legal theory</u> justifying the
<u>retroactive</u> exoneration for the illegal break-in.

Likewise, there is <u>no legal theory</u> justifying
the <u>brutal forced "medical treatment,"</u> nor a
<u>legal theory</u> justifying, what he carefully ignores —
"<u>legal incompatibility,</u>" as a matter of law,
for ruling "consent" to go with the police
while <u>simultaneously</u> charging <u>resisting</u>
arrest. Nor is there any legal theory
justifying the use of a <u>fraudulent pretext</u>
of medical treatment [when no charges of any kind are
"on" the "patient," while <u>not under arrest</u>
as sworn by Parsons at trial] to remove
a person forcibly from his locked room, even
if no medical treatment is actually contemplated
by the E.M.T.'s and police, <u>as in the instant
case.</u> Trader's ruling rambles on for pages
in the trial transcript but, in pertinent
part, states:

> "The Court: Well, assuming that the entry
> was not agreed upon. But, if
> the police get into the room,
> and he consents to go with
> them, is there a valid consent?

(24)

"Ms. Frost:  Your Honor, I honestly don't
            know if that negates an illegal
            entry ...."
                    [Trial Transcript, pp. 163-164]

 ....

"
 Mr. Hurst: ... I think it's stipulated that
            there's no search warrant --

The Court: Right. "
                [Trial Transcript, p. 166]


 ....

"
The Court: ....
            Alternatively, another exception
            to the search warrant require-
            ment is consent. And, even
            Assuming arguendo, that the
            prior entry was illegal, the
            defendant consented to go
            with the police officers.
            Therefore, this consent has
            purged any taint of illegality. "
                    [Trial Transcript, pp. 170-171]


c. It is not simply the facts that needed to
be illegally concealed by the defendants' hindering any sub-
quent review of the "fixed" case, but the
rulings have no foundation in law whatever
by Trader, acting in a flagrantly scofflaw
abandonment of any caution or prudence
whatever ~ As he did later in his retaliatory
letter of March 4, 2004. Trader had imposed
a fine of $100.00, which is the precise threshold

(25)

beyond which Hurst had **a right of appeal**
by law. Trader thereby **precluded any
appeal in Delaware whatever**. Since the U.S.
Supreme Court's review is purely discretionary
regarding Hurst's petition for review, **no
court** to date has reviewed the merits,
regarding **fabricated facts or law** in
Trader's rulings, **ever**. Hence the **importance**
of the instant defendants' retaliation and
intimidation of Hurst in **bankruptcy court**,
**years after their crimes** as set
forth herein, **to prevent**, delay or
hinder their exposure, and subjection
of the instant defendants, and those
in the **Rehoboth Beach** and **Dover** cases,
to **legal accountability** for these egre-
gious and **continuing** violations.

Indeed, the pathetic Trader, no doubt val-
iantly attempting to be effective as a
**shill** to "fix" the case, **cannot** even
**persuade Frust** (the prosecuting Deputy
Attorney General) that his preposterous
**fabrication** of "consent," **never imagined
by her or the police**, could **RETROACTIVELY**
be used, even **theoretically**, so that it **legally**

> "... negates an illegal entry ...."

[See **supra**; Trial Transcript, pp. 163-164]


d. Another rather obvious frivolity in Trader's
expansive and bizarre theories, either expressly
or necessarily inherent in his stated rulings,
is his apparent legal conclusion that
if **voluntary** "consent" could possibly be
construed (of course, the heavy burden is

on the state to prove it by clear and convincing evidence) from the remarkable protests and physical refusals to go, sworn to by the witnesses and interviewees, the consent is, by long settled law, always subject to instant revocation as clearly set forth and defined in Painter v. Robertson, 185 F. 3d 557, 567 (6th Cir. 1999) and the U.S. Supreme Court decisions directly on this point cited therein:

"... The consenting party may limit the scope of that search, and hence at any moment may retract his consent .... [citing authorities] Thus, although the instant defendant officers had legitimately entered Lucky's pursuant to Painter's permission, and were conducting a legal consent search thereof, that search should have terminated instantly upon Painter's revocation of consent, and the officers should have promptly departed the premises ...."

Of course, Hurst rejected the police when he spoke to the dispatcher unambiguously, when she expressly asked me whether I wanted the police to return. [I had just asked them to leave minutes before when they rudely refused any assistance whatever calling it "nonsense complaints"(as explicitly set forth in their police reports) when I explained the nearly fatal injuries caused by the collapsing building in Riyadh, Saudi Arabia and treated previously five (5) days earlier by Dr. Wilbanks across the street from the Rehoboth Beach Police Department.]

(27)

Indeed, as sworn to at trial by Parsons and Armstrong and corroborated by all the interviews by Internal Affairs, and by all the police reports (including Sutherland's police report regarding "Arrestee Injury"), Hurst told the police he was "fine," asked them to leave and told them he did not need them when they arrived back at Hurst's <u>locked room door minutes later</u> despite his clear rejection of their <u>presence</u> (<u>agreed to by the dispatcher</u>) immediately before their arrival) this 2nd encounter. He <u>never</u> gave them the key to his room; <u>never</u> gave them permission to obtain (somehow) the key and <u>at all times refused</u> their requests, told them <u>repeatedly to leave</u>, <u>demanded an attorney repeatedly and immediately</u>, and told them pointedly that their <u>violations of law would be reported.</u>

<u>No consent of any sort</u> can be <u>wrung</u> from these corroborated facts, but even if <u>claimed</u> by Trader, the <u>revocations</u> set forth by Sutherland's concealed report (and all other reports) required that these crimes against Hurst be

> "... terminated instantly ..., and the officers should have promptly departed the premises." (<u>Painter</u>, <u>supra</u>, p. 567)

Of course, these crimes are subject to exposure in <u>bankruptcy proceedings</u>. When such exposure takes place, they can also be used in <u>subsequent civil and criminal proceedings</u>, such as the instant case as well as the <u>Rehoboth Beach</u> and <u>Dover</u> cases, and future <u>indictments</u> of these perjuring felons.

(28)

43. By overnight letter dated February 1, 2005, Drowos, unable to obtain assistance of the so-called "prosecuting attorney" in Virginia, threatened by Trader and Faust in their letters attached to this complaint, directly and illegally practiced law <u>in Virginia representing</u>, by his own words:

"... Ms. Wilkins and the Delaware Court
of Common Pleas ...." [Exhibit E hereto]
[Trader is a member of the "Delaware Court of Common Pleas.]

44. Drowos was not admitted <u>pro hac vice</u>, or otherwise, for his retaliatory filing in his official capacity, by his own words, as

"... A Deputy Attorney General for the
State of Delaware ...." [Exhibit E.]

45. Drowos then proceeds to lie to the District Court (Judge Ellis) by preposterously, and utterly falsely, representing <u>that Hurst had claimed</u> that he (Drowos) had entered his "appearance" in the Wilkins case And that his office had been "served" "pursuant to 10 Delaware Code Section 3103." Drowos protested that the District Court had no "jurisdiction" over Wilkins. The District Court, of course, noted that (contrary to Drowos' uninformed rantings to the District Court in Virginia reviewing the bankruptcy decision on appeal) the service by first class mail, <u>pursuant to the bankruptcy rules on Wilkins</u> was quite proper.

46. Drowos then flagrantly misrepresents the bankruptcy judge's ruling [denying Hurst's motion for judgment on the default (duely entered by the clerk) based <u>not</u> on the inapplicable <u>Rooter-Feldman</u> doctrine (since this doctrine by settled law does not apply if the judgment

(29)

in question to be reviewed lacked due process
or was otherwise void) but rather on his
explicit statement that he did not think
that a bankruptcy court had the jurisdiction
to hear any § 1983 legal action. He
dismissed the motion for default judgment
solely on this jurisdictional issue — not on
the merits of the case (to declare the
"fraudulent convictions void ab initio due to
structural error" and other due process
violations.) The latter issue, among others, is
currently before the U.S. Supreme Court on a
petition for certiorari.]

47. Drowos then stated

    "... our opposition to any further
     proceedings regarding the instant
     case."

48. Drowos' letter, on its face, retaliates
against Hurst (as did Trader's and Faust's
letters) and is consequently a per se
violation of Hurst's 1st Amendment rights
against such retaliation as explained in
the Marasco case, supra.

49. Drowos letter represents a conflict of
interest since his duties as a Deputy Attorney
General conflict with his unlicensed practice
of law representing Wilkins in a federal
court in Virginia, in her individual and
official capacities (either capacity of Wilkins
would represent a conflict for Drowos as
a Delaware Deputy Attorney General). Consequently
this is disqualifying conduct, independent of
the civil rights violation of retaliation, for

(30)

Drowos to continue as legal counsel as a Deputy Attorney General in the instant case as well as the Rehoboth Beach and Dover cases.

50. Drowos' egregious conspiracies to conceal the illegally withheld evidence ordered by Judge Beauregard are violations of civil and criminal laws for the same or similar reasons specified relative to Trader and Faust herein. He has access to all the records (and more, in view of his representation, and conspiracies with Kearney and the independent contractors associated with Kearney and SCI).

51. Drowos' unlawful retaliation in the district court was done for the express purposes of vacating the bankruptcy discharge and to terminate

"...any further proceedings regarding the instant case."

Consequently, his intention to protect the instant defendants, and those in the Rehoboth Beach and Dover cases by hindering, delaying or precluding access to the courts by this per se retaliation is clear. The additional facts that he continues to conceal illegally the evidence in contempt of court in violation of Judge Beauregard's orders are independent civil rights and criminal violations.

52. Drowos (as did Trader and Faust) intimidated Hurst and made his threat of future illegal filings in legal actions, in retaliation for Hurst's "protected activity" of accessing the courts for legal relief, manifest here and elsewhere.

(31)

53. Kearney is a policymaker, supervisor, manager, liaison with independent contractors and subcontractors as well as with legal counsel (such as Faust and Drowos), and warden of SCI.

54. Kearney has direct personal involvement as a _nucleus_ of policies; practices; usages; customs; independent contractor contractual requirements and management; implementation of regulations, court rules, canons of ethics, medical treatment; and protection of inmates and pretrial detainees (such as Hurst) from illegal and injurious medical practices, violence, attack dogs, and deprivation of necessities of life for those placed in SCI including, but not limited to, water, food, operating toillets and prescribed medicine.

55. Kearney _failed, and conspired_ to coverup, in each of the areas of "_personal involvement_" noted herein as a policymaker, supervisor, manager, liaison with independent contractors and with legal counsel representing Kearney individually and in his official capacity (either as an independent contractor himself, or as an employee, of the Delaware Department of Corrections). These failures in his "personal involvement" directly caused the injuries and damages to Hurst not only on April 9-10, 2001, but each and every day since that time as _ongoing violations of law_ and _civil rights_ as set forth herein. These acts and violations personally caused by Kearney include, but are not limited to:

a) _Formulation and implementation of policies;_ practices; rules; usages; customs; statements of work and requirements for contractors and subcontracts that directly caused the following egregious conduct:

(32)

- use of lunging, threatening, and intimidating attack dogs by persons (whether employees or independent contractors) at SCI to torture pretrial detainees (including Hurst) and inmates.

- use of improper, and failure to use proper, segregation of persons posing a risk of tuberculosis at SCI to inmates and pretrial detainees (including Hurst) — sometimes he did NOTHING.

- use of medical procedures, without the informed consent of pretrial detainees (including Hurst), such as injection of "tuberculin" and drawing of blood.

- deprivation of prescribed medicine for Hurst.

- punishment (by whatever false name used to conceal the punishment — names used as euphemisms to conceal violations of law) by placing Hurst in solitary confinement when the Internal Affairs Report specifically exonerates Hurst [from even being claimed by SCI personnel, or any other person] from misconduct of any sort whatever at SCI.

- falsification of medical records so that acts of torture are concealed by SCI personnel (used herein to include employees of SCI or employees of independent contractors at SCI or others working at SCI in any capacity) An example is requiring Hurst to stand naked (or with an open gown) in front of his solitary confinement cell for minutes until two guards sneaked up

behind him, each guard taking an arm
of Hurst as he quietly stood motionless
in <u>strict obedience</u> of the instructions.
The guards grabbed and straighted Hurst arms behind his
back and **HURLED** (not <u>merely</u> using vio-
lence to push, shove, place or in
any other manner legitimately to use
force) several yards in the air causing
Hurst to smash against the cement
cell wall and embankment, several
yards away, <u>face first</u>. This was
done with full knowledge that Hurst
had been severely and repeatedly sprayed in
his eyes with pepper spray (from <u>inches</u>
away while securely strapped with hands
firmly secured at his sides unable to
protect his eyes) shortly before by the
Rehoboth Beach police and that he was
<u>blinded</u> (and was substantially blinded for days
thereafter with <u>permanent</u>, diagnosed
scar tissue to the eye). This criminal
act of torture was directly witnessed
by SCI personnel, and in compliance
with Kearney's policies, customs and practices
(both written and unwritten), and for
the purpose of illegally concealing this
torture to protect the guilty parties
(and to preserve the witness' job), the
<u>witness falsified</u> the medical record to
falsely claim that Hurst was:

> "... <u>Assisted</u> by 2 C.O.'s <u>placed</u>
> in RM 81. No <u>visual signs</u> of
> injury ... (emphasis added) [<u>why check then</u>?]

Hurst's head smashed against the wall
with great impact despite his efforts
to land away from the wall and

(34)

cell embankment, nearly knocking him unconscious, and causing severe injuries, headache and nausea, which despite Hurst's requests for medical attention, remained undiagnosed and untreated.

• Prior to being hurled into solitary confinement to punish and torture him, as requested by, and pursuant to conspiracy with, the transporting Rehoboth Beach police (Parsons and Riddle), an SCI guard, for no reason whatever, struck Hurst with the heel of his hand severely in the forehead after Hurst promptly [independent of any physical contact with Riddle or the guard] had complied with their in- structions to shower and remove his clothes. The blow caused Hurst's legs to buckle but he did not fall down but rather was grabbed immediately by the throat by Riddle as he plunged his thumb deeply into the windpipe and informed Hurst that he was in

    "... serious trouble ....".

• The Internal Affairs Report exonerates Hurst of any misconduct at SCI (none was ever claimed) but did so attempting, frivolously, to show that if such illegal violence had occurred, it surely would have been duely recorded by the perpetrators. Absolutely no medical personnel were present in the shower area and no one other than Hurst, and the violent guard and policeman (Riddle) observed their assault and battery. No intoxication was involved at the initial abduction from

my room in Rehoboth Beach or at SCI
despite the training of the state
perpertrators, or others acting under color
of law, to falsify records claiming
intoxication or lack of cooperation or
similar terms (such as "assisted"
or "placed" when Hurst was tortured
by hurling and smashing his head
against the cell wall). The Internal Affairs
Report describes the SCI records, relative
to Hurst's lack of misconduct quite unambig-
uously, as follows:

"Furthermore records from Sussex Cor-
rectional Institution indicate there were
no incident reports or disciplinary re-
ports on file for Mr. Hurst during
his incarceration." (Internal Affairs
Report, p. 67)

Consequently, there is conclusive proof, of
record, that the acts of violence, torture,
and punishment (See incorporated factual alle-
gations in this regard in the Rehoboth Beach
and Dover cases) against a pretrial detainee,
including Hurst, cannot be justified by any
legitimate penal policy, practice, usage,
custom, independent contractor practice
(condoned or ratified by Kearney or not), or
purpose at SCI (including the intensive
"Boot Camp" program implemented during
Hurst's detainment at SCI).

• The Internal Affairs Report, in numerous
passages, clearly demonstrates Kearney's efforts to
conceal evidence at SCI in implementing the
conspiracy to coverup the torture and
other illegal acts, set forth herein with

(36)

The instant defendants, since he coordinated with the Dover police initially in whitewashing his own practices of torture at SCI (Internal Affairs Report) and continues to conceal illegally these violations of civil rights. He also conspired with Faust when she was required by Judge Beauregard's orders to produce the blood sample of Hurst and other records from SCI and/or the independent contractors and subcontractors. (The blood was never produced since it conclusively proves lack of intoxication.)

* Kearney personally continues, with full knowledge of his responsibilities regarding the extracted blood, and other information and records, to conceal (in violation of law and court order) the blood itself (or its location or his knowledge that it has been destroyed) despite Judge Beauregard's orders and applicable regulations, proper practices, law and civil rights raised by Hurst in ongoing litigation naming him and SCI as defendants, by conspiring with Drowos, his legal counsel.

* Kearney personally authorized, implemented, ratified and failed to discipline the attack dog handlers using these vicious dogs to intimidate, threaten and otherwise torture Hurst as a pretrial detainee at SCI several hours after Hurst had been ordered "released to the street" by medical personal. This was done, as was the other violence and wrongful acts against Hurst, pursuant to an understanding, request, agreement, conspiracy, practice, usage, custom, or other violation of law and

for and on behalf of the Rehoboth Beach transporting police (Parsons and Riddle). Parsons had repeatedly sprayed Hurst in the eyes to force him to voluntarily "consent" to go with the police for the pretextual purpose of medical treatment. [Hurst had earlier witnessed the rude and illegal conduct of the thugs he encountered on the first "911" call and flatly rejected their "services" on the second "911" call, believing them to be violent and unreliable.] During this rampage of pepper spraying Hurst and his hands were firmly strapped at his sides on the gurney. Nevertheless, the enraged Parsons continued to spray even after a person present, witnessing the violence, shouted (twice):

"That's enough! That's enough!"

Parsons, however, did not stop but fired with the spray repeatedly, thereby hitting Riddle (as he and Sutherland report) in the face. Riddle obtained prompt cleansing in the hotel after witnessing Parsons handcuff Hurst directly as he rose from the gurney (after being released and told to rise), hurled toward the police car many yards away, repeatedly smashed against the police car while handcuffed behind Hurst's back, and thrown to the ground. [Riddle claims he was blinded and thus could not see.] The torture and violence at SCI, condoned, ratified and never disclosed or rectified by Kearney was due to the rage of Parsons and Riddle, told to the listening SCI personnel. This was observed and

(38)

heard by Hurst during the in-processing
of Hurst (photographing and related pro-
cedures). Kearney's policies and practices,
as well as hiring and training, directly
caused the use of such violent persons,
and the atmosphere and lack of discipline
or accountability, which enabled these
violators, and allowed their torture.

b) Kearney was notified personally by letter dated
May 3, 2001, of these violations of law, and the
violence and other wrongful conduct by him
and personnel at SCI and Rehoboth Beach police.
This letter, and the facts directly per-
tinent to him and SCI, is attached
hereto as Exhibits F1 and F2. In
addition, the "Internal Affairs Director"
was notified (whether this is also Kearney
or a another person conspiring with Kearney
is to be determined in discovery and liti-
gation regarding this matter). The latter
letter is attached hereto as Exhibit F3.

Kearney and the Internal Affairs Director
did not cause (as requested) these violations to be

"... carefully investigated, publicized,
and rectified, with the assailants
brought to justice ...." (Letters
dated May 3, 2001)

Rather, Kearney immediately covered-up
the wrongful conduct; falsified records;
illegally withheld and concealed the
blood sample ordered to be produced
by Judge Beauregard; and conspired

with the Dover police to whitewash the torture and other violations with the Internal Affairs police from Dover, the Internal Affairs SCI personnel, Faust, Drowos and various independent contractors and subcontractors, and the instant defendants, to hinder, delay or prevent disclosure in bankruptcy proceedings, or otherwise, in violation of applicable laws, regulations, and Hurst's civil rights.

- Kearney failed utterly to investigate and rectify any of the wrongful conduct, including torture, which constitute ongoing violations of law as well as the rights of inmates and pretrial detainees who are unfortunate enough to be treated in this manner, secretly at SCI, without the slightest legitimate, legal, or constitutional justification.

· Kearney's personal, hands-on, involvement in these violations, all of which are known to him, is active, continuing, and in clear violation of 42 U.S.C. §1983 and 18 U.S.C. §242 (a federal felony).

- Kearney personally failed, in violation of his duties, to properly discipline, restrict and control SCI personnel and independent contractors; to take adequate precautions in hiring and retention of SCI personnel and independent contractors; to forward to the appropriate authorities evidence of criminal acts by SCI personnel and independent contractors; to establish or assure the functioning of a bona fide and meaningful system for dealing with complaints (such as Hurst's) regarding misconduct by SCI or independent contractors, but instead

(40)

responded to those types of complaints
with deliberate indifference to the
life, medical needs and safety of
inmates and pretrial detainees, or with negligence
(including gross negligence). Rather Kearney
responded with gross lack of integrity,
obstruction of justice, conspiracies noted
herein, and official denials calculated to
mislead the public, the state and federal
investigatory, regulatory and legislative
oversight bodies (including ongoing
federal investigations and a Delaware
legislative inquiry by the Honorable
Nancy Wagner), the public and Hurst.

- Kearney's misconduct and violations of law,
including concealment of federal funding of
various federal cooperative programs (including
the "Boot Camp" program by conspiring with
Drowos), predictably resulted in the SCI per-
sonnel and independent contractors being trained
to know that they would not be aggressively,
honestly, and properly investigated and prose-
cuted with the foreseeable result that
said defendants were more likely to
do these wrongful acts and torture against
Hurst and others.


56. Each of the instant defendants, independent contractors
and subcontractors and their employees and personnel, as
well as Does I - XX, and all defendants referenced
herein in the Rehoboth Beach and Dover cases, in so
far as they relate to the instant complaint, are
alleged to be acting under color of law as
state actors constituting "persons" under 42 U.S.C.
§ 1983, acting in violation of Hurst's civil rights under
the 1st, 4th, 5th, 6th, 7th and/or the 14th Amendment.

(41)

## CAUSAL Link - Per Se Retaliation Violation

57. Perhaps the most difficult part of a retaliation claim is providing suffient evidence of the "causal link" between the "protected activity" and the "retaliation." These terms in The instant complaint are used in the sense, with the same meanings, as set forth by Circuit Judge Greenberg of the Third Circuit Court of Appeals, writing for the court in Estate of Smith v. Marasco, 318 F.3d 497, 512 (3rd Cir. 2003):

"First Amendment Retaliation Claim

   To prove that the defendants violated Smith's First Amendment rights against him for filing complaints, the Smiths must show: (1) that Smith engaged in protected activity; (2) that the government responded with retaliation; and (3) that The protected activity was the cause of the retaliation. See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

58. Trader's letter and documented subsequent acts, demonstrate the "causal link" as this phrase is used in the Marasco case, supra. Consequently, this case involves a per se and conclusive violation of 42 U.S.C. § 1983 as well as the analogous provision of 18 U.S.C. § 242 (a federal felony).

59. All of the defendants in The instant case are illegally protected from exposure of their wrongful conduct (pleaded, and set forth in argument and subsequent submissions in Rehoboth Beach and Dover) by Agreement, arrangement and conspiracy with Faust and/or Drowos (such as Kearney in his

individual and official capacities, and the
independent contractors conspiring with Kearney,
Faust and Drowos, illegally to conceal, falsify
or destroy evidence [involving Hurst's blood sample
illegally drawn at SCI; the acts exposing
Hurst to tuberculosis; the falsification of
records of witnesses and perpetrators of
torture by physical violence and lunging
attack dogs; the deprivation of water,
food and prescription medication in a
solitary confinement cell with an inoperable
toillet and no source whatever of water; and
similar violations of applicable regulations,
standards, practices, laws and civil rights].
Many of these items (and all records) are specifically
named or included in Judge Beauregards out-
standing orders to produce, issued prior to
the sham "trial" by Trader, aside from
being required by Delaware and federal
law, case authority, and constitutional
requirements.


60. Since Judge Beauregard's orders were to the
"State," they clearly include, at a minimum, the
Attorney General personnel. Initially, the orders
were directed at Faust, but since Drowos has
assumed the duties he claims (see infra), to
enforce the "fines and costs" as part of the
continuing prosecution ordered by Trader
(Court of Common pleas "judge" replacing Judge
Beauregard), he is clearly subject to Judge
Beauregard's ongoing and outstanding orders
to produce the evidence illegally withheld cur-
rently by the Attorney General personnel,
by Kearney and others deemed as part of
the "State" within the scope of her orders.
Consequently the instant defendants, who con-

(43)

spire to violate Judge Beauregard's orders
are in criminal contempt of court each day
they continue to violate her unvacated orders,
including Trader, White, Wilkins, Faust, Tunnel,
Drowos, Kearney and Does I-XX. These
are continuing criminal and civil rights violations
and other violations set forth herein. They remain
until the outstanding and unvacated orders
are complied with, regardless of subsequent
litigation or appeal. Consequently, the fact that
the instant causes of action regarding retaliation
and intimidation, and others set forth in the
Counts herein, have occurred in a later time-
frame, in no way renders them nugatory.[Trader
assumed at trial, and since then, the prosecutorial role as part of the "state"
subject to outstanding orders as a defacto prosecutor.]

61. In addition to Trader's per se retaliation violation
pleaded herein, Hurst alleges that the attached letters
implicate, on their faces, White, Wilkins, Faust,
and Drowos in per se retaliation violations under
the elements clearly stated in the MARASCO case,
quoted supra. The names of these individuals
are set forth directly in the letters from
Trader, Drowos, and Faust. Their acts, in
each one's role, appear, and are explicitly
described, in express language in the applicable
letter. Consequently, not only the particular
contribution in the retaliatory acts of each
defendant is irrefutable, so is the agreement
and conspiracy to make that particular contri-
bution. The overt acts in implementing the
conspiracies are conclusively proven by the
letters alone [in the context of Hurst's
filing the "amended complaint" in the adversary
proceeding against Wilkins in bankruptcy court,
as well as the discharge in the bankruptcy
proceeding itself].

(44)

## DAMAGES

62. In addition to the injuries and damages
set forth elsewhere in this complaint (and
as set forth in the Christopher v. Harbury case,
supra, regarding loss of "denial-of-access" cases, both
forward and backward looking, explained therein),
Hurst has been subjected to the following injuries
and damages:

a) Intentional infliction of emotional)
distress, as well as physical pain, suffering
and injuries resulting from these and other violations;

b) Exposure, infection and/or distress
caused by such exposure and contact
by medical authorities warning Hurst
of the exposure and consequences
thereof;

c) Intimidation and fear of retaliation, already
demonstrated by Trader's contempt proceedings
which foreseeably may well be followed by
arrest, jail and the same or
similar (or worse) torture, yet again, set
forth in this complaint;

d) Hindrance, delay, prevention and preclusion
of past and future access to the
courts [ or petitioning redress from
other branches of state or federal
government] based on past and current
violations of the stay [by both Trader or Wilkins]
in force at all times relevant to this complaint, against
the fines and costs imposed by Trader. These
violations include extortion of monies
paid by Hurst pursuant to a threat

(45)

of arrest (Wilkins) and the commencement
of contempt proceedings by Trader, thereby
precluding and hindering litigation
in the bankruptcy court, and elsewhere, which
would have been instituted, or continued,
to <u>redress violations</u> of the instant
defendants [as well as the defendants
in the <u>Rehoboth Beach and Dover</u>
cases];

e) Major financial losses due to lost
earnings; legal and medical costs; lost
business and independent contractual
opportunities requiring security clearances
for highly classified military and government
work and/or services both in the past
and future; and other economic losses
causing bankruptcy and the diminution
of opportunities due to a record
of bankruptcy; the manifestly unjust and
illegal subjection of Hurst to fraudulent
and fabricated arrest and conviction records,
on a previously unblemished record, which
aside from economic losses, has caused
the loss of reputation, good standing,
good name and loss of several years
time attempting to rectify it. These
wrongful and unconstitutional acts against
Hurst, and the continuing violations set
forth herein, have <u>effectively terminated</u>
<u>Hurst's career</u> of approximately Thirty (30)
years on major projects of national
security, airports, overseas military
projects and major weapons systems and
transfers under the Arms Export Control
Act (AECA) and related laws and regulations.

(46)

Count I (Violation of Civil Rights – 42 U.S.C. §1983)

63. Hurst incorporates herein the allegations contained in paragraphs 1–62.

64. Each and every wrongful, violent, torturous, or conspiratorial act set forth in this complaint, in violation of Hurst's civil rights, is alleged to be a separate violation and claim under 42 U.S.C. §1983, including all violations of criminal and/or civil laws, regulations, standards, and proper practices.

Count II (Retaliation) (42 U.S.C. §1983)

65. Hurst incorporates herein the allegations contained in paragraphs 1–64.

66. The instant defendants have committed per se violations, and other violations, by use of retaliation, as set forth herein, of Hurst's civil rights.

Count III (Denial of Access To Courts And Government)
42 U.S.C. §1983

67. Hurst incorporates herein the allegations contained in paragraphs 1–66.

68. The instant defendants have denied access to the courts and other branches of government as set forth herein (as explained in Christopher v. Harbory, supra) relative to past, current, and future access and redress, including completed or pending litigation, due to illegal and wrongful concealment and withholding of evidence, destruction of evidence, fabrication of evidence, conspiracies with numerous overt acts set forth herein (and incorporated from related litigation), and refusal and failure properly and honestly to investigate and/or rectify these wrongful acts.    (47)

Count IV (Conspiracies) (42 U.S.C. §1983)

69. Hurst incorporates herein the allegations contained in paragraphs 1-68.

70. The instant defendants have committed civil rights, and common law and/or state and/or federal, violations pursuant to conspiracies between and among them, collectively and individually, and in pairings and groupings, as set forth herein for the shared purposes and goals to commit the aforesaid violations, and to protect themselves and others from lawful accountability under civil and criminal laws and regulations.

Count V (Abuse of Process) (42 U.S.C. §1983)

71. Hurst incorporates herein the allegations contained in paragraphs 1-70.

72. The instant defendants by conspiracy, and individually, have committed civil rights violations by abuse of process.

Count VI (Malicious Prosecution) (42 U.S.C. §1983)

73. Hurst incorporates herein the allegations contained in paragraphs 1-72.

74. The instant defendants by conspiracy, and individually, have committed malicious prosecution, and resulting civil rights violations.

Count VII (Intentional Infliction of Emotional Distress)
              42 U.S.C. §1983

75. Hurst incorporates herein the allegations contained in paragraphs 1-74.

76. The instant defendants by conspiracy, and individually, have committed the intentional infliction of emotional distress causing physical injuries requiring medical treatment and resulting civil rights violations.

Other Counts

77. Hurst incorporates herein the allegations contained in paragraphs 1-76, in each of the following counts based on causes of action under state and/or federal statutory and common law:

Count VIII  Abuse of Process
Count IX    Malicious Process
Count X     Breach of Contract
Count XI    Negligence and/or Gross Negligence
Count XII   Assault and Battery
Count XIII  Conversion and/or Theft
Count XIV   Intentional Infliction of Emotional Distress
Count XV    False Arrest and Imprisonment

Each of the intentional torts, and violations involving intentional or willful acts, herein, are alleged to be done with malice in Counts I-XV.

Counts VIII - XV are alleged also to constitute violations of 42 U.S.C. §1983 against Hurst.

## Request For Relief

Plaintiff requests the following relief:

1. Compensatory damages in the amount of $10,000,000.00;

2. Punitive damages in the amount of $10,000,000.00;

3. Attorney's fees pursuant to 42 U.S.C. §1983;

4. Costs of suit;

5. Injunctive relief to be specified;

6. Declaratory relief to be specified;

7. Other appropriate relief.

Respectfully submitted,

Jerry A. Hurst

Jerry A. Hurst, **pro se**
Plaintiff
1201 S. Courthouse Rd., #534
Arlington, VA 22204
(703) 920-2839

Dated: March 4, 2006

Exhibits:
  A. Trader letter
  B. Stay of Fines And Costs
  C. Amended Complaint in Bankruptcy
  D. Faust Letter
  E. Drewes Letter
  F1, F2, and F3. Letters To Kearney and SCI Internal Affairs Director

Exhibit A

## COURT OF COMMON PLEAS
## FOR THE STATE OF DELAWARE

**MERRILL C. TRADER**
JUDGE

COURT HOUSE
DOVER, DELAWARE
PHONE: (302) 739-4618

March 4, 2004

Mr. Jerry A. Hurst
1201 S. Courthouse Road #534
Arlington, Virginia 22204

      **Re:**    **State of Delaware v. Jerry A. Hurst**
              **Cr.A. No. 01-05-0583 and 01-05-0584**

Dear Mr. Hurst:

      I have received a summons and notice from Doris Wilkins, Clerk of the Court of Sussex County relating to an amended complaint that you filed in with the United States Bankruptcy Court of the Eastern District of Virginia, Alexandria Division. Fines and costs imposed by this court are as a result of criminal convictions against you on February 5, 2002 on the charges of falsely reporting an incident, disorderly conduct and resisting arrest. I enclose a copy of the transcript of this proceeding.

      The fines and costs imposed in these cases are not dischargeable in bankruptcy. I am requesting that the deputy attorney general that prosecuted this case to contact a prosecuting attorney in Virginia and have him enter his appearance and object to the discharge of these fines in bankruptcy. Finally, I request that the clerk of the court schedule a contempt hearing for non-payment of your fines.

                    Very truly yours,

                    Merrill C. Trader

MCT/lbw

Enclosure

pc:    United States Bankruptcy Court, Eastern District of Virginia
       Veronica Faust, Esquire, Department of Justice
       The Honorable Rosemary B. Beauregard
       Doris Wilkins, Clerk of the Court

Exhibit B

COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

Defendant: JERRY A HURST                    Case Number:0104005136

  Address: 1201 S COURTHOURSE RD              Home Phone:(703) 920-2939
          #534                          Work Phone:(703) 920-2839
          ARLINGTON, VA 22204

On December 20, 2006 you were ordered to pay $532.00 to the Court of

Common Pleas, Sussex County, 1 THE CIRCLE, SUITE 1, SUSSEX COUNTY

COURTHOUSE, Georgetown, DE 19947 Your signature below indicates that

you have agreed to pay $532.00 in one installment until paid in full.

The first payment is due on December 20, 2006  You must include your
name and address on your payment.

    1.   You must notify the Court immediately if you change your
address or telephone number.

    2.   Failure to make payments as agreed above for fines, costs and
restitution will result in your being charged with Contempt of Court.

    3.   You may be required to discharge delinquent installments of
fines and costs through the Work Referral Program.

    4.   If you receive a notice to appear for a Court hearing and
fail to show up, the following action will be taken.

        a.   A warrant may be issued for your arrest.
        b.   Your driver's license may be suspended.
        c.   You may be charged a fee for the cost of the warrant.

                                  *Jerry A. Hurst*
                            Defendant's Signature

                     Dated:December 29, 2005

Sussex County Court of Common Pleas
1 THE CIRCLE, SUITE 1
SUSSEX COUNTY COURTHOUSE
Georgetown, DE 19947

Exhibit C

Jerry A. Hurst
1201 S. Courthouse Rd.,#534
Arlington, VA 22204
(703) 920-2839
Debtor, pro se

United States Bankruptcy Court
Eastern District of Virginia
Alexandria Division

Jerry A. Hurst
        Plaintiff, pro se

v.                                        Case No. 03-15031-SSM

Doris Wilkins, individually               Chapter 7
and in her official capacity
as Clerk of the Court of
Common Pleas, in and for
Sussex County, Delaware
        Defendant

Amended Complaint To Determine Dischargeability Of
Certain Debts

1. Debtor filed this case under Chapter 7 of the Bankruptcy
Code on November 5, 2003. This Court has jurisdiction over
this action under 28 U.S.C. 1334. This proceeding is a core
proceeding.

2. This adversary proceeding is filed to determine the constitu-
tionality and dischargeability of three (3) separate debts includ-
ed in a judgment of the Court of Common Pleas sought to be collected
by the Clerk of the Court.

3. The judgment contains three fines of $100 each plus fees for
videophone usage and fees for the Victims Compensation Fund (VCF).
The alleged misdemeanor violations (disorderly conduct, "911" call
for medical assistance without "emergency;" and resisting arrest)
were explicitly admitted by the State to be "victimless" precluding
as a matter of law "restitution" as an issue.

4. The judgment, convictions, fines and fees are unconstitutional
as a matter of law as violating the 4th, 5th, 6th and 14th Amend-
ments to the United States Constitution for the following reasons:

a. No appeal~was~allowed whatever, falsely claiming that the fine did not meet the threshold amount under Article IV, §28 of the Delaware Constitution;

b. The ~criminal diversion from the appellate process of the~ critical 148 page transcript of the hearing before Judge Beauregard, in which she issued numerous orders finding the State in violation of her previous orders, as well as federal constitutional mandates, to immediately produce several items of exculpatory evidence, including plaintiff's blood for independent analysis and eight (8) audio tapes highly incriminating to the violent police whose felony criminal conduct and subsequent attempted obstruction of justice was the subject of an Internal Affairs Investigation, the results of which were illegally withheld from the court in flat violation of Judge Beauregard's explicit, repeated oral and written orders. After the issuance of the above-noted orders, one "Judge Trader" was hastily substituted from another jurisdiction to replace Judge Beauregard.

c. In addition to the violations set forth below, Trader, by corrupt arrangement, through his secretary and on record in court, falsely represented to plaintiff that several motions to enforce the outstanding orders of Judge Beauregard and sanctions against the State for contempt of court would be heard on February 5, 2002. These repeated representations were made by his secretary directly to plaintiff on February 4, 2002 when plaintiff stated he would file a petition for writ of prohibition if the court refused, in brazen violation of plaintiff's constitutional rights, to enforce the outstanding orders of the court. Plaintiff was repeatedly assured the motions would be heard on February 5, 2002, making the writ unnecessary. At the ~very~ moment she made these assurances, over and over due to plaintiff's insistence on accurate and truthful information, since she was the authorized person I had been specifically instructed to contact by the Clerk of the Court, she had already typed the order, signed by Trader three (3) days earlier, summarily denying all the motions. The order was mailed so as not to arrive in Virginia at plaintiff's home until after the trial. This scheduling fraud was placed on the record on February 5, 2002, when Trader for the specific purpose of fixing the case, ordered an "instant" trial after being apprised of the above facts and clearly acknowledging his previous knowledge of them. He refused a continuance and indicated he didn't care about lack of notice and , indeed, stated that the trial would immediatley take place "For whatever reason." (Trial Transcript pages 4-6 and page 128.)

d. In order to conceal the violations noted above, Trader relied on Artcle IV, §28 which precludes any appellate review, regardless of how egregious the misconduct, unless certain threshold conditions are met. In addition, after the plaintiff filed the Notice of Appeal, totally divesting Trader of any further jurisdiction in the case, he illegally issued a written order denying plaintiff the transcripts on appeal which are by law required ~for any~ appellant even to determine the proper application of Article IV, §28. Flaunting his scofflaw actions, he notes on the face of the order that he doesn't even have jurisdiction to consider the matter, since the matter had been appealed five (5) months earlier to the Superior Court. In compliance with this order, invalid on its face <u>ab initio</u>, the court reporter (one Ms. Lavender), falsly certified that she had filed the critical Beauregard transcript with the Superior Court. ~She~ She subsequently confessed that she had

The Superior Court had intervened, overriding Trader's illegal order.

(2)

not, in fact, filed the transcript in any court but had withheld the transcript. She had represented, in writing, that she had duely filed the Beauregard transcript in the Superior Court in a letter to plaintiff, and admitted otherwise, only after discovery of the fraud by the plaintiff. The falsified official certification is in the transcript.

e. The scheduling fraud had the intended effect of not allowing constitutionally required notice to plaintiff to subpoena witnesses, prepare for trial, authenticate voluminous medical records conclusively proving the almost fatal injuries incurred on a military project in Saudi Arabia which gave rise, in strict accordance with numerous doctors orders, to the "911" call for medical assistance the night of the warrantless break-in and attack by police. The calculated violations of Trader, and the State, precluded any pretense of a fair trial in violation of numerous state and federal laws including, but not limited to, 42 U.S.C. $1983 (civil) and 18 U.S.C. $242 ( a federal felony) under color of law. (It is important to note that no criminal conduct nor administrative actions nor actions without jurisdiction are subject to judicial immunity whatsoever.) These actions are the subject of ongoing, and soon to be expanded, matters currently before state and federal authorities. In addition, formal charges of public corruption will definitely be filed against the guilty parties in the Delaware Court on the Judiciary and the relevant licensing agencies in Delaware. A demand for a complete investigation has been made by the responsible member of the Delaware legislature who will receive ongoing information in the matter.

f. Despite the hasty substitution of Trader, he did not dare alter or vacate Judge Beauregard's orders to produce evidence, as well as her explicit finding on the transcript of past violation by the State of her outstanding orders previously issued. He simply ignored them despite numerous written and oral motions by plaintiff for compliance with these orders constituting <u>res judicata</u> and the irrefuteable law of the case.

g. The case was prosecuted solely to protect certain police from felony violations under color of law (an ongoing matter involving state and federal authorities) by a warrantless break-in, to plaintiff's locked hotel room as he slept in his bed. The police had secretly obtained the key from the hotel clerk and sneaked into plaintiff's locked room without knocking or announcing their presence. They refused to leave when repeatedly requested to do so. When I made it clear that their grotesquely criminal conduct would be reported, as it was with formal, written charges filed with state and federal authorities, they fabricated ludicrous and false charges against plaintiff. They filed a probable cause affidavit totally ommitting the warrantless break-in or obtaining the key from the hotel clerk. Bad faith is palpable and undeniable in the initial criminal acts committed by the police and subsequent efforts by Trader, and others including Doris Wilkins, individually and in her official capacity as Clerk of the Court of Common Pleas.

h. In addition to gross bad faith, only briefly noted above, plaintiff will incur irreparable harm, including but not limited to multiple and continuing efforts, to obstruct justice and protect guilty police from their own criminal violations by the defendant; by maintaining utterly bogus records of criminal arrest and conviction of plaintiff

whose record was previously unblemished and which serves as a
major impediment to the continuation of his profession requiring
high security clearances for work on U.S. military projects in-
major weapons systems transfers under the Arms Export Control
Act (AECA); by defendant's continuing efforts to arrest plaintiff
and suspend his Virginia driver's license for failure to pay these
utterly invalid fines and fees; the constant and unpredictable threat
of disruption of plaintiff's life by threats of issuance of warrants
of arrest for the purpose of intimidating plaintiff into not asserting
his rights for civil and criminal redress against the perpetrators
of the initial warrantless break-in and subsequent attempted cover-up;
and the defendant's efforts to thwart the principles and goals of
the Bankruptcy Code by constitutionally invalid fines and fees.

5. The Fourth Circuit Court of Appeals states in In Re Thompson,
16 F. 3d 576, 577 (4th Cir. 1994) that:

  11 U.S.C. § 523(a)(7) provides that a discharge under sec-
  tion 727 does not discharge a debtor from any debt to the
  extent that debt:
    (1) is for a fine, penalty or forfeiture;
    (2) payable to and for the benefit of a governmental
    unit; and
    (3) is not compensation for actual pecuniary loss.
  The parties agree, as they must, that before a debt is con-
  sidered nondischargeable under this section, the debt must
  meet all of the three requirements under § 523(a)(7) ennum-
  erated above.

6. The videophone usage fee is on its face, and as designated
in the court judgment, for use of the videophone. Therefore,
as a matter of law it is not a fine and is compensatory, thereby
making it dischargeable under Thompson, supra.

7. The Victims Compensation Fund (VCF) is a separate fund maintained
under certain strict rules for the sole benefit of victims of crime
and neither payable to, nor for the benefit of, a governmental unit.
Therefore, as a matter of law , this fee is dischargeable also.

8. However, the Delaware Supreme Court, in its most recent holding
on the point, has specifically held the following:

  "We hold that the proposed assessments [VCF] are penal in
  nature and inextricably connected to a criminal conviction."
  (Petition of State, Del.Supr., 603 A.2d 814,815(1992))

9. Therefore, as a matter of Delaware law, the VCF monies ordered
by the Court of Common Pleas against plaintiff are fines and penalties
which must be added to each fine of $100 making each fine exceed
the threshold under Art. IV, §28, supra, thereby requiring the right
of appeal for plaintiff. Since plaintiff was denied this right, and
a host of others to be detailed in subsequent submissions in this
adversary proceeding, the judgment of the Court of Common pleas is
void ab initio, and as a matter of law cannot be given legal effect.

10. The due process and equal protection provisions of the 14th Amendment require that the plaintiff be afforded the protections not only under the 14th Amendment but also, through it, the added protections against wrongful state action as set forth in the 4th, 5th and 6th Amendments clearly violated in the case in Delaware that is the subject of this adversary proceeding.

11. As a matter of settled law set forth in numerous federal cases implementing the doctrines put forth be the U.S. Supreme Court in Younger v. Harris, 401 U.S.37, 91 S.Ct. 746 (1971), the Younger doctrine not only allows but requires, in the appropriate cases, the granting of equitable relief (injunctive and declaratory) to effect and advance the principles and goals of the Bankruptcy Code without interference or obstruction by illegal state action. (These matters will be the subject of appropriate legal briefs by plaintiff at the proper time in this proceeding.)

12. For the foregoing reasons plaintiff requests:

a. Declaratory judgment that the judgment of the Court of Common Pleas is void as a matter of law;

b. Injunction against acts to collect these debts; threaten to arrest or arrest plaintiff to enforce this invalid judgment; threaten to suspend or suspend, through Virginia authorities' cooperation, plaintiff's driver's license; and other equitable relief to be specified;

c. Order specifically discharging the debts noted above;

d. Costs of suit;

e. Attorney's fees; and

f. Other relief deemed proper by this Court.

Date: February 20, 2004

Respectfully submitted,

Jerry A. Hurst

Jerry A. Hurst, pro se
Plaintiff

1201 S. Courthouse Rd.,#534
Arlington, VA 22204
(703) 920-2839

(5)

 Exhibit D

**M. JANE BRADY**
**ATTORNEY GENERAL**

### STATE OF DELAWARE
**DEPARTMENT OF JUSTICE**

**NEW CASTLE COUNTY**
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

**KENT COUNTY**
102 West Water Street
Dover, DE 19904
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

**SUSSEX COUNTY**
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-2500

**PLEASE REPLY TO :**

July 2, 2004

The Honorable Merrill C. Trader
The Court of Common Pleas
38 The Green #6
Court House
Dover, DE 19901

Re: State of Delaware v. Jerry Hurst
Case No. 0104005136

Dear Judge Trader:

I am writing to apprise the Court of the State's response to the discharge of Mr. Hurst's fines and costs in Case No. 0104005136 in bankruptcy. This matter has been assigned to Stuart Drowos in our office. Mr. Drowos has determined that a motion to vacate the discharge in Bankruptcy must be filed with the United States Bankruptcy Court in Virginia. Mr. Drowos has contacted our counterparts in Virginia to secure assistance in the filing of such a motion. He is awaiting a reply to determine what level of assistance will be provided to us. Mr. Drowos will keep the Court apprised of the status of the State's efforts in this regard.

Very truly yours,

Veronica O. Faust
Deputy Attorney General

pc: Jerry Hurst
Stuart Drowos
Steve Wood



Exhibit E

**M. JANE BRADY**
**ATTORNEY GENERAL**

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

NEW CASTLE COUNTY
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

KENT COUNTY
102 West Water Street
Dover, DE 19904
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

SUSSEX COUNTY
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-2500

February 1, 2005

**PLEASE REPLY TO:**

The Honorable T.S. Ellis, III
United State District Judge
United States District Court for the
Eastern District of Virginia
401 Courthouse Square
Alexandria, VA 22314

VIA OVERNIGHT

**Re:    Hurst v. Wilkins**
**C.A. No. 1:04cv 1357**
**Bankruptcy Action No. 03-15031-SSM**

Dear Judge Ellis:

I am a Deputy Attorney General for the State of Delaware. In that capacity, I assumed representation for other Delaware State defendants in a related civil action filed by Mr. Hurst in the United States District Court for the District of Delaware.

It is my understanding that the Appeller in the above-captioned matter, Ms. Doris Wilkins, was sued by Mr. Hurst in an adversary proceeding in the above-numbered bankruptcy matter. It is also my understanding that said proceeding was dismissed by the Honorable Stephen S. Mitchell last fall and Mr. Hurst subsequently appealed that decision to this Honorable Court.

I have been asked by Ms. Wilkins and the Delaware Court of Common Pleas (for which she is a clerk) to review the pending matter and determine what action should be taken on her behalf, particularly in reference to the oral argument now scheduled before Your Honor for this Friday, February 4, 2005. I respectfully submit that despite any claims by Mr. Hurst to the contrary, I have not entered my appearance in this matter nor has my office, pursuant to 10 Delaware Code Section 3103, been served. My knowledge of the case came from Ms. Wilkins forwarding copies of Mr. Hurst's pleadings.



The Honorable T. S. Ellis, III
February 1, 2005
Page 2

Accordingly, I respectfully submit that service of process has not been perfected, thereby calling into question this Honorable Court's jurisdiction.

In light of the above, and without waiving these procedural deficiencies, I respectfully note our opposition in allowing the matter to proceed as scheduled. Though Your Honor's January 19, 2005 Order indicates the parties have filed their respective briefs, neither I, Ms. Wilkins, nor anyone from my office, filed any such response to Mr. Hurst.

Our opposition to the matter also stems from our belief that Mr. Hurst's ultimate prayer for relief is a reversal of a criminal conviction obtained against him in a Delaware State Court. In our estimation this runs afoul of the well-established *Rooker-Feldmen* doctrine recognized by Judge Mitchell and made part of the basis for his dismissal of Mr. Hurst's adversary proceeding.

Thus, we again wish to note for the record our opposition to any further proceedings regarding the instant case. In addition, we wish to advise this Honorable Court, with all due respect, that Ms. Wilkins will not be in attendance at the proposed oral argument scheduled for later this week.

Thank you for Your Honor's attention to and consideration of our position. I remain.

Respectfully,

Stuart B. Drowos
Deputy Attorney General

SBD/lc

Cc:    Clerk of the Court
       Mr. Jerry Hurst
       Ms. Doris Wilkins

Exhibit F1

Jerry A. Hurst
1201 S. Courthouse, Rd. #534
Arlington, VA 22204

703-920-2839

3 May 01

Warden Rick Kearney
Sussex Correctional Institution
R.D. 1, Box 500
Georgetown, DE 19947

Dear Warden Kearney:

Enclosed is a Statement of Facts presenting only one case of what is serious and widespread public corruption and violence in the Rohoboth Beach Police Department and the Sussex Correctional Institution in Delaware.

In the instant case, the illegal breaking and entering of my hotel room by uniformed men while I was sleeping was primarily to extract me from the hotel so that a brutal attack could be executed against me outside the hotel without witnesses. This procedure allowed wholly fabricated charges to be filed against me to serve as camouflage and extortion to protect the assailants from legitimate felony charges against them for the brutal crimes against me.

You are respectfully requested to cause this matter to be carefully investigated, publicized, and rectified, with the assailants brought to justice, not only to protect my future safety and constitutional rights but also to protect the same for the public at large. They are undoubtedly unaware of this egregious and spreading public corruption, as I was prior to 9 April 01, and deserve to be forewarned.

Sincerely,

_____
Jerry A. Hurst

Exhibit F2

Part of "Statement of Facts" sent to Kearney and
Internal Affairs Director (See Exhibits F1 and F3)


6) I was taken to the Sussex Correctional Institute where I was assaulted and battered
numerous times to the head and body, stripped nude, denied proper water, food, and
medication. I was hurled nude into solitary confinement by two assailants against a
concrete wall. Upon release approximately 24-36 hours later, I was denied many
possessions including my money, wallet and proper clothing for a stormy, cold night
many miles from assistance.

7) At no time was I informed of any conduct on my part that could possibly justify such
obviously illegal, unconstitutional brutality. At no time was I allowed a phone call or
in any manner to contact my lady friend or any attorney. The institute's personnel
ejected me from this "correctional institute" without a taxi or means to obtain one and
without a ride to a hospital or other place of refuge for treatment.

8) I have sustained major and permanent physical and psychological injuries, for which I
have been to a number of emergency wards of hospitals and specialist doctors
obtaining treatment. This treatment was necessary in part due to recklessly and
illegally taken blood and other injurious tests performed at the "correctional
institute."

Exhibit F3

Jerry A. Hurst
1201 S. Courthouse, Rd. #534
Arlington, VA 22204

703-920-2839

3 May 01

Internal Affairs Director
Correction Department
Central Administration Bldg.
245 McKee Rd.
Dover, DE 19904

Dear Director:

Enclosed is a Statement of Facts presenting only one case of what is serious and
widespread public corruption and violence in the Rohoboth Beach Police Department and
the Sussex Correctional Institution in Delaware.

In the instant case, the illegal breaking and entering of my hotel room by uniformed men
while I was sleeping was primarily to extract me from the hotel so that a brutal attack
could be executed against me outside the hotel without witnesses. This procedure
allowed wholly fabricated charges to be filed against me to serve as camouflage and
extortion to protect the assailants from legitimate felony charges against them for the
brutal crimes against me.

You are respectfully requested to cause this matter to be carefully investigated,
publicized, and rectified, with the assailants brought to justice, not only to protect my
future safety and constitutional rights but also to protect the same for the public at large.
They are undoubtedly unaware of this egregious and spreading public corruption, as I
was prior to 9 April 01, and deserve to be forewarned.

Sincerely,

Jerry A. Hurst

GENERAL FEDERAL FORMS                    0 6 -    1 4 6

## JS 44.  CIVIL COVER SHEET

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Jerry A. Hurst, pro se

**DEFENDANTS**

Merrill Trader, et al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Arlington, VA**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **Kent Co., DE**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jerry A. Hurst, pro se
1201 S. Courthouse Rd., #534
Arlington, VA 22204

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF (For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury – | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | or Defendant) | Under Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 871 IRS – Third Party | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Civil Rights Violations (42 U.S.C. §1983) and related causes of Action.

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P.23

DEMAND $ 20,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ YES  ☐ NO

**VIII. RELATED CASE(S)** (See instructions)
IF ANY

JUDGE Kent A. Jordan

DOCKET NUMBER 03-362-KAJ  04-0083-KAJ

DATE
March 4, 2006

SIGNATURE OF ATTORNEY OF RECORD
Jerry A. Hurst

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____