## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JERRY A. HURST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-146-KAJ |
| | ) |
| MERRILL TRADER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Plaintiff Jerry A. Hurst ("Hurst") brings this civil rights action pursuant to 42

U.S.C. §1983 seeking compensatory and punitive damages, and injunctive and

declaratory relief. He also raises supplemental state claims. Hurst appears *pro se.* On

March 16, 2006, he was granted *in forma pauperis* status, pursuant to 28 U.S.C. §

1915. (D.I. 3.) I now proceed to review and screen the complaint pursuant to 42 U.S.C.

§ 1915.

For the reasons discussed below, I am dismissing the complaint because the

claims raised are either barred by the applicable limitation period, fail to state a claim

upon which relief may be granted, are frivolous, or are brought against individuals who

are immune from suit. I decline to exercise supplemental jurisdiction over the state law

claims.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

The allegations in the complaint stem from Hurst's misdemeanor criminal

convictions and imposition of fines in the Court of Commons Pleas, Sussex County,

Delaware, for resisting arrest, falsely reporting an incident, and disorderly conduct.

Hurst brings the current suit against Merrill C. Trader, a judge on the Delaware Court of

Common Pleas ("Judge Trader"); Linda White ("White"), clerk and assistant to Judge

Trader; Doris Wilkins, Clerk of the Court of the Court of Common Pleas ("Wilkins"); Rick

Kearney, warden at Sussex Correctional Institute ("Warden Kearney"); State of

Delaware deputy attorneys general Veronica Faust ("Faust"), Christine Tunnel

("Tunnell"), and Rick Drowos ("Drowos"); and John Does I through XX, unnamed

independent contractors and subcontractors. The defendants are sued in their

individual and official capacities.

The current case is a continuation of Civil Case Nos. 03-362-KAJ and 04-83-

KAJ, filed by Hurst in this district court, and is brought against many of the same

defendants, and raises many of the same claims. The averments in Civil Case No. 03-

362-KAJ focus on actions that allegedly took place prior to and after Hurst's arrest, but

before the criminal court proceedings. The averments in Civil Case No. 04-83-KAJ

refer to Civil Case No. 03-362-KAJ, but for the most part contain allegations for a time-

frame later than those allegations in Civil No. 03-362-KAJ. In this most current case,

Hurst makes allegations for a time frame following his convictions, when he was

engaged in bankruptcy proceedings. He also raises claims made in the prior two

cases.

Hurst appealed his misdemeanor convictions of resisting arrest, one count of

falsely reporting an incident, and one count of disorderly conduct, *Hurst v. Delaware*,

2003 WL 1387136 (Del. Super. Feb. 11, 2003), but the appeal was dismissed for lack

of jurisdiction because neither the prison sentence nor the fines imposed met the

jurisdictional threshold for a right of appeal. The Superior Court's decision was affirmed

and certiorari review by the Delaware Supreme Court was denied as moot. *Hurst v. Delaware*, 832 A.2d 1251, 2003 WL 21810821 (Del. Aug 24, 2003).

I take judicial notice that Hurst filed a Chapter 7 bankruptcy proceeding in the U.S. Bankruptcy Court for the Eastern District of Virginia, Case No. 03-15031-SSM. He also filed an adversary proceeding (i.e., amended complaint) against Doris Wilkins, Clerk of the Court of Common Pleas, Sussex County, Delaware, Adversary Proceeding No. 04-1023. When Wilkins did not respond to the amended complaint, Hurst sought a default judgment against her.

In its Memorandum Opinion dated September 10, 2004, the Bankruptcy Court stated that Hurst's bankruptcy action was "ostensibly brought to determine the dischargeability of fines and court costs imposed as a result of criminal convictions for three misdemeanors", but "in actuality, ... the debtor seeks to invalidate the underlying convictions, which he asserts were obtained in violation of his constitutional rights." (Sept. 10, 2004 Mem. Op. in Case No. 03-1501-SSM, Adv. Proced. No. 04-1023, at p. 1.) The Bankruptcy Court held that because the criminal fines and penalties were nondischargeable, and because it lacked subject-matter jurisdiction to review the underlying convictions, Hurst's motion for default judgment against Wilkins would be denied without prejudice to Hurst's right to bring an action in a court of appropriate jurisdiction to set aside his convictions or to obtain other relief for the alleged violations of his constitutional rights. (*Id*. at 5-18.) The Bankruptcy Court decreed that any portion of the adjudged court costs for which Hurst would have been liable even had he been acquitted were dischargeable and they were discharged. (*Id*. at 19). Hurst appealed the order to the U.S. District Court for the Eastern District of Virginia.

3

(E.D.Va. Case No. 1:04cv57.)  The District Court affirmed the Order on February 1,
2005.  (*Id.* at D.I. 7.)  Hurst next appealed the matter to the U.S. Court of Appeals for
the Fourth Circuit (No. 05-1237), and on August 1, 2005, it affirmed the order of the
district court.  Hurst sought and, on April 3, 2006, was denied certiorari by the United
States Supreme Court (Case No. 05-8950).

The allegations in the current case begin in 2004 when Hurst received
correspondence from Judge Trader dated March 4, 2004.  Hurst alleges that Judge
Trader commenced contempt proceedings against him by issuing an order to the clerk
of the court to "schedule a contempt hearing for non-payment of [] fines".  (D.I. 2, p. 6.)
Hurst alleges that Judge Trader knew that the fines and costs were stayed by law and a
written agreement between him and the Court of Common Pleas, and that at no time
was he in a state of non-payment.  Hurst alleges that the letter, on its face, expressly
retaliates against him for filing an amended complaint in the Bankruptcy Court.  Hurst
alleges the letter was an action of retaliation on the part of Judge Trader to cover up
wrongful actions in the underlying criminal prosecution.  Hurst also alleges that Judge
Trader commenced additional actions against him by enlisting the assistance of a
prosecuting attorney in Virginia.  Finally, it is alleged that Judge Trader's actions
violated Hurst's right to unfettered access to the courts.

The letter, attached to the complaint as "Exhibit A", states that Judge Trader
received a summons and notice from Wilkins, relating to an amended complaint filed by
Hurst in the U.S. Bankruptcy Court for the Eastern District of Virginia.  The letter states,
"fines and costs imposed by this court are as a result of criminal convictions against you
on February 5, 2002, on the charges of falsely reporting an incident, disorderly conduct,

and resisting arrest". *Id.* The letter goes on to state that "fines and costs imposed in these cases are not dischargeable in bankruptcy". *Id.* The letter advises Hurst that a request was made to the deputy attorney general that prosecuted the criminal case to contact a prosecuting attorney in Virginia to enter his appearance and object to the discharge of the fines in bankruptcy. Finally, the letter advises Hurst that the clerk of the court was requested to schedule a contempt hearing for non-payment of fines.

Exhibit B is a notice, signed and dated by Hurst, dated December 29, 2005, regarding the payment of his criminal fine, and indicating that the first payment is due on December 20, 2006. The notice advises Hurst of the consequences if he does not make payment. (D.I. 2, Ex. B.)

Hurst alleges that White, an assistant or clerk to Judge Trader, actively implemented the scheduling fraud set forth in the Dover complaint (i.e., Civil Case No. 04-83-KAJ). Specifically, Hurst alleges that White lied to him on February 4, 2002, regarding court matters. He also alleges that White typed the March 4, 2004, letter, and that, as Judge Trader's assistant and with full knowledge of Judge Trader's criminal acts, she willingly participated and conspired with Judge Trader and other defendants. (D.I. 2 at ¶¶ 34-36.)

Hurst alleges Wilkins conspired to commit illegal acts to coverup her violations of law prior to the adversary proceeding in bankruptcy. He alleges that Wilkins conspired with Judge Trader for the purpose of retaliation and intimidation. In this regard, Hurst alleges that "rather than Wilkins seeking proper legal counsel", the March 4th letter indicates that Judge Trader received the adversary proceeding documents directly from Wilkins. Hurst alleges that a conspiracy ensued for the purpose of precluding, delaying

or hindering access to the courts so that Wilkins could rectify prior wrongful acts. (*Id*. at ¶¶ 37-38.)

Hurst next alleges that Judge Trader conferred, planned, and acted continually with Wilkins, and deputy attorneys general Faust and Drowos to retaliate against him and intimidate in violation of his civil rights. Hurst alleges that two letters demonstrate such conduct: the Faust letter and the Drowos letter. Hurst alleges these two letters evidence Faust's conspiracy with all the defendants. (*Id*. at ¶¶ 38-41.)

Hurst alleges that the Faust letter contains a threat that extends beyond the Wilkins' adversary bankruptcy proceeding in that it threatens to "vacate the discharge in bankruptcy". The Faust letter is written to Judge Trader and indicates that the matter of Hurst's discharge of fines and criminal costs in a bankruptcy proceeding was assigned to attorney Stuart Drowos. The letter apprises Judge Trader of the action that Drowos planned to take in the bankruptcy matter. (D.I. 2 at ¶¶ 39-41, Ex. D.)

The Drowos letter is written to U.S. District Court Judge T. S. Ellis of the U.S. District Court for the Eastern District of Virginia. (D.I. 2, Ex. E.) Drowos explains to Judge Ellis that he was asked by Wilkins and the Delaware Court of Common Pleas to review the Hurst's pending bankruptcy appeal to determine what action should be taken on behalf of Wilkins as the Clerk of the Court for the Delaware Court of Common Pleas. Drowos advises that he received copies of the pleadings filed against Wilkins directly from her. Drowos challenges the court's jurisdiction in the matter and also contends that Hurst's filing against Wilkins runs afoul of the *Rooker-Feldmen* doctrine. (*Id*.)

Hurst alleges that Drowos was not admitted to appear in the alleged retaliatory filing, that the letter Drowos authored to Judge Ellis contains "lies" regarding entry of

6

appearance and service, and that Drowos misrepresented the ruling by the Bankruptcy Court. Hurst alleges that Drowos' letter, on its face, retaliates against him, and is a *per se* violation of his First Amendment right against retaliation. Hurst alleges that Drowos' actions were taken for the express purpose of vacating the bankruptcy discharge and to terminate any further proceedings in the case. Hurst also alleges that Drowos intimidated him with his threat of future illegal filings in legal actions in retaliation for Hurst's protected activity of accessing the courts. Finally, Hurst alleges that Drowos conspired with Warden Kearney, and the independent contractors associated with Kearney at SCI, to conceal evidence illegally withheld in the underlying criminal action. (*Id.* at ¶¶ 43-52.)

As to Warden Kearney, Hurst alleges that he is responsible for the illegal policies, practices, usages, customs, and the like at Sussex Correctional Institute. Hurst specifically alleges that Kearney has personal involvement for damages and injuries caused to him on April 9th and 10th , 2001, and for each and every day since that time, as an ongoing violation. Hurst also alleges that on May 3, 2001, Warden Kearney he notified Warden Kearny of certain violations of law, including the wrongful conduct of the warden, personnel at SCI, and the Rehoboth Beach Police. Hurst alleges that Warden Kearney personally failed to investigate these alleged violations. (*Id.* at ¶¶ 53-55.)

Although she is named as a defendant, Christine Tunnel does not appear to be featured in any of the allegations in the complaint.

Hurst alleges the defendants retaliated against him and that the retaliation extends to pending and future litigation. He makes expansive allegations that the

7

reason for retaliation all relate to his underlying criminal convictions because of alleged illegally concealed items, and alleged legally frivolous and "fixed" rulings by Judge Trader.

Counts I through VII are brought pursuant to 42 U.S.C. § 1983. Count I alleges "wrongful, violent, torturous or conspiratorial acts committed in violation of Hurst's civil rights, including all violations of criminal and/or civil laws, regulations, standards and proper practices." Count II alleges the defendants committed "*per se* violations" in retaliation of Hurst's civil rights. Count III alleges denial of access to courts and other government assistance "relative to past, current, and future access and redress, including completed or pending litigation due to illegal and wrongful concealment and withholding of evidence, destruction of evidence, fabrication of evidence," conspiracy, and failure to "properly and honestly ... investigate and/or rectify the wrongful acts." Count IV alleges the defendants committed violations of civil rights, common law, state law, and federal law and conspired to protect themselves and other from lawful accountability. Count V alleges the defendants individually, and in a conspiracy, committed civil rights violations by abuse of process. Count VI alleges the defendants engaged individually, and in a conspiracy, in malicious prosecution. Count VII alleges the defendants intentionally inflicted emotional distress, causing physical injuries requiring medical treatment. Counts VIII through XV purport to raise supplemental state claims and claims under 42 U.S.C. § 1983  for abuse of process, malicious process, breach of contract, negligence and/or gross negligence, assault and battery, conversion and/or theft, intentional inflection of emotional distress, and false arrest and imprisonment.

8

Hurst seeks compensatory and punitive damages, declaratory and injunctive relief, and attorney's fees.

## II. STANDARD OF REVIEW

When a litigant proceeds *in forma pauperis,* 28 U.S.C. § 1915 provides for dismissal under certain circumstances. Section 1915(e)(2)(B) provides that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)(citing *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993)). Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Inasmuch as plaintiff proceeds *pro se*, I will construe the complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III. ANALYSIS

### A. 42 U.S.C. § 1983

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted

under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). Hurst attempts to depict himself as a victim of retaliation and conspiracy and points the finger at any individual who has a connection to actions taken during the arrest, pre-trial, trial, conviction, or post-conviction stages of the misdemeanor criminal proceedings and his follow-on filing in the bankruptcy court. After reviewing the complaint, the exhibits provided by Hurst, and the rulings of the various courts, it is evident that, as to the claims made in this action, the defendants did not violate Hurst's rights under the United States Constitution.

Proof of a retaliation claim requires that Hurst demonstrate (1) constitutionally protected conduct; (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citations omitted).

For a conspiracy claim, there must be evidence of (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by defendants with the specific intent to violate that right. *Williams v. Fedor,* 69 F.Supp.2d 649, 665-66 (M.D.Pa.), *aff'd,* 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v. Lyford,* 171 F.3d 330, 340 (5th Cir. 1999)). *See also Parkway Garage, Inc. v. City of Phila .,* 5 F.3d 685, 700 (3d Cir. 1993) (plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law)*; Kelley v. Myler,* 149 F.3d 641, 648-49 (7th Cir. 1998) (an agreement or an understanding to deprive the plaintiff of constitutional rights must exist).

10

Case 1:06-cv-00146-KAJ   Document 4   Filed 05/16/06   Page 11 of 16 PageID #: 78

Hurst's allegations fall far short of raising a claim for deprivation of a constitutional right. While he says that the defendants conspired and retaliated against him, the exhibits he has submitted indicate that the State of Delaware, through its employees, sought only to take appropriate legal action concerning Hurst. Such acts are not violative of Hurst's constitutional rights, and his claims have no arguable basis in law or in fact. Moreover, it is evident from Hurst's numerous court filings that he has not been deprived of his access to courts.

Therefore I am dismissing the complaint without prejudice, as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

## B.    Judicial Immunity

Even if Hurst had adequately alleged a constitutional violation, his claims against Judge Trader fail. Judges are absolutely immune from suits for monetary damages and such immunity cannot be overcome by allegations of bad faith or malice. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity can only be overcome if the judge has acted outside the scope of his judicial capacity or in the "complete absence of all jurisdiction." *Id*. at 11-12. Here, Hurst relies upon letters, court documents, and actions taken by Judge Trader, all to allege that he is not entitled to judicial immunity.

Hurst makes much ado about the March 4, 2004, letter, characterizing it as a retaliatory action. It is evident in reading the letter, that it is no such thing. Indeed, the letter evinces that Judge Trader was acting within his judicial scope in advising Hurst that his criminal fines were not dischargeable in bankruptcy and that Hurst was facing contempt charges. Contrary to Hurst's allegations, the letter does not indicate that

11

Judge Trader acted outside the scope of his judicial capacity or in the absence of his jurisdiction. *Mireles*, 502 U.S. at 11.

Judge Trader is immune from suit for monetary liability under 42 U.S.C. § 1983. Accordingly, the claims against him are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

## C.    Quasi-Judicial Immunity

I reiterate that Hurst has failed to state a claim of a constitutional violation. Nonetheless, even if he had, his claims against White and Wilkins fail by reason of quasi-judicial immunity. Judicial immunity has been extended to clerks and prothonotaries when the clerk is "performing a ministerial function at the direction of [a] judge," *Waits v. McGowan,* 516 F.2d 203, 205-206 (3d Cir. 1975); *accord Slotnick v. Garfinkle,* 632 F.2d 163, 166 (1st Cir. 1980), or performing ministerial duties of a judicial nature pursuant to a statute, *see Smith v. Rosenbaum,* 460 F.2d 1019 (3d Cir. 1972); *accord Scott v. Dixon,* 720 F.2d 1542 (11th Cir. 1983), or performing acts which are judicial in nature and integral to the judicial process. *See Waits v. McGowan,* 516 F.2d at 205-06; *Smith v. Rosenbaum,* 460 F.2d at 1020; *Robinson v. McCorkle,* 462 F.2d 111, 113 (3d Cir. 1972); *Shipley v. First Federal Sav. and Loan Ass'n of Delaware*, 619 F.Supp. 421, 438-39 (D. Del. 1985).

Here, the allegations are that White typed a letter for Judge Trader in March 2004. As to Wilkins, Hurst takes exception that she did not seek legal counsel in the adversary bankruptcy proceeding, but rather that she referred the matter to Judge Trader. As discussed above, Hurst sought to discharge in bankruptcy court the fines he had been assessed following his criminal conviction.

12

White and Wilkins are entitled to dismissal on grounds of judicial immunity as any alleged actions on their behalf were plainly integral to the judicial process. Accordingly, the claims against them are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

## D.   Personal Involvement and Prosecutorial Immunity

The claims against Faust, Tunnel, Drowos, and Does I through XX all fail for lack of personal involvement.   A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.   *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.,* 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir.1978)).   "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.   *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).   Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights.   *Id.; see Monell v. Department of Social Services* 436 U.S. 658, 694-95 (1978).

In the present case, the complaint contains no allegations against Tunnel.   The complaint does contain allegations against Faust and Drowos, but those allegations are based upon letters written by Faust and Drowos in the course of their representation of the State of Delaware, and they do not indicate any personal involvement in the deprivation of Hurst's constitutional rights.   Also, as prosecutors, deputy attorneys

general Faust and Drowos have absolute immunity for all activities relating to judicial proceedings.[1] *See Imbler v. Pachtman*, 424 U.S. 409 (1976).

Finally, the complaint contains insufficient allegations against Does I through XX to associate against them any allegations of a constitutional deprivation. Hurst alleges that their names, capacities, and particular acts will be specified as they become known. Indeed, the complaint contains no names, specific dates, or times as to any of the Doe defendants.

Based upon the foregoing, the claims against Faust, Tunnel, Drowos, and Does I through XX lack an arguable basis in law or in fact and are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

## E.   Limitation Period

I must also point out that many of the claims raised by Hurst are time barred. The limitation period for such § 1983 claims is two years, *see Carr v. Dewey Beach,* 730 F.Supp. 591, 602 (D.Del. 1990), and this complaint was filed on March 6, 2006, so any claims occurring prior to March 6, 2004, are barred by the two year limitation period.

Hurst specifically refers to actions taken by White on February 4, 2002 (i.e., she allegedly lied to him). He also alleges that Warden Kearney is responsible for injuries

---

[1]The Third Circuit has defined the scope of absolute immunity for prosecutors as follows:

> This includes activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out of court behavior "intimately associated with the judicial phases" of litigation. *See id; Fry [v. Melaragno]*, 939 F.2d [832, 838, (9th Cir. 1991)] (activity occurring as part of presentation of evidence is absolutely protected)... .

*Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994)(quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992)).

caused to him on April 9 and 10th, 2001, and that Kearney was alerted on May 3, 2001,
to unlawful actions yet he failed to investigate. The complaint also contains numerous
allegations for actions taking during the arrest, pre-trial, and trial stages of his criminal
case. Significantly, there was a final determination of that case by Delaware Supreme
Court on August 4, 2003, two and one-half years prior to the filing of the present
complaint. All of the above-referenced allegations are therefore barred by the
applicable limitation period.

The Third Circuit has not considered whether a district court may *sua sponte*
dismiss a § 1983 claim as time-barred under 28 U.S.C. § 1915(e)(2)(B) where the time-
bar is apparent on the face of the complaint, but several federal circuits have permitted
*sua sponte* dismissal under these circumstances. *See, e.g., Nasim v. Warden,
Maryland House of Correction,* 64 F.3d 951 (4th Cir. 1995); *Pino v. Ryan,* 49 F.3d 51
(2d Cir. 1995); *Gartrell v. Gaylor,* 981 F.2d 254, 256 (5th Cir. 1993); *Myers v. Vogal,*
960 F.2d 750, 751 (8th Cir. 1992); *Street v. Vose,* 936 F.2d 38 (1st Cir. 1991).
Accordingly, I note that the claims against Warden Kearney, as well as all other claims
based on actions occurring prior to March 6, 2004, are subject to dismissal not only
because Hurst has failed to allege any basis for relief but also because those claims
are time-barred.

## F. Supplemental Jurisdiction

Because the complaint fails to state a federal claim, I decline to exercise
jurisdiction over Hurst's supplemental state law claims. 28 U.S.C. § 1367; *De Asencio
v. Tyson Foods, Inc.,* 342 F.3d 301, 309 (3d Cir. 2003). Additionally, I have determined
that amendment of the complaint would be futile. *See Grayson v. Mayview State*

15

*Hosp.,* 293 F.3d 103, 111 (3d Cir. 2002); *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d. Cir. 1976).

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that the complaint is DISMISSED without

prejudice as legally and factually frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

Amendment of the complaint would be futile.  The Court declines to exercise

supplemental jurisdiction over the state law claims.

UNITED STATES DISTRICT JUDGE

May 16, 2006
Wilmington, Delaware

16